No. 18,038.

STANDARD MARINE INSURANCE CO., LTD. *v.* ROBERT B. N.
PECK, ET AL. AND THE LAWN AND GARDEN SUPPLY AND
EQUIPMENT COMPANY.

THE LONDON AND LANCASHIRE INSURANCE COMPANY, LTD.
*v.* THE LAWN AND GARDEN SUPPLY AND
EQUIPMENT COMPANY.
(342 P. [2d] 661)

Decided July 20, 1959.   Rehearing denied August 17, 1959.

Messrs. BENNETT & HEINICKE, for plaintiffs in error.

Mr. GEORGE M. GIBSON, Mr. EUGENE O. PERKINS, for defendants in error.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

PLAINTIFFS in error were defendants in three separate suits consolidated for trial in the district court and presented and argued here under one writ of error. The actions were commenced in the district court, El Paso County, by Robert B. N. Peck and his wife, Miriam N. Peck, as owners of a building which was destroyed by fire, and by The Lawn and Garden Supply and Equipment Company, a corporation, wholly owned by the Pecks and under which entity they operated a business on the premises. Insured merchandise of the corporation was destroyed or damaged in the fire. Standard Marine Insurance Co., Limited, was the insurer of the building and contents. A neon sign of the corporation was insured with The London and Lancashire Insurance Company, Ltd.

The two insurance companies will be referred to as Standard Marine or the London Company or as defendants. The plaintiffs will be referred to as such.

The suits were brought to collect from the defendants losses incurred which Standard Marine refused to pay and which London Company paid by sight draft, but upon which it stopped payment claiming mistake. Plaintiffs in their complaints allege the insurance contracts, the payment of premiums thereon, and full compliance with the terms thereof, the loss, the demand upon the defendants for payment, and the refusal of the defendants to pay.

Among several defenses interposed by Standard Marine was the existence in its insurance contract of a clause suspending its insurance during any period in which an increase in hazard existed in the premises. The particular paragraph provided as follows:

"Conditions suspending or restricting insurance.—Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring

"(a) while the hazard is increased by any means within the control or knowledge of the insured, * * * *"

The London Company contract had a provision removing coverage from loss or damage by illegal trade.

In support of their contentions that the insurance coverage had been suspended at the time of the fire, the defendant insurance companies proved that plaintiff The Lawn and Garden Supply Company stocked a display of fireworks openly on tables in its store. Three boys came into the store on a Sunday afternoon about 2 o'clock and from one of the display tables picked a toy gun which emitted sparks when the trigger was pulled. The boy said he was playing "rockets" which he explained as aiming the sparks at various of the fuses protruding from the fireworks to see if they would orbit. The boy succeeded in igniting a pyrotechnic device called a "fountain," whereupon the display, like some politicians, went off in all directions, and the ensuing fire destroyed the store and contents.

Upon the conclusion of the trial which was to the court without a jury, the court entered findings of fact and conclusions of law sustaining the suits of the plaintiffs and awarding them recovery for the losses to the full extent of the policies involved. To the findings and judgments of the trial court defendants are here by writ of error, and assert as their main points that the court erred:

1. In placing upon the defendants the burden of proof to show that the increased hazard clause had been vio-

lated and the further finding that defendants had not sustained such burden of proof.

2. In finding and concluding that the stock of fireworks did not increase the hazard.

3. In finding and concluding that the parties contemplated the carrying of fireworks among its stock in trade, and

4. In concluding it was not material to the issues whether the fireworks stocked by plaintiff company were prohibited by law.

Questions to be Determined.

First: *Did the court err in holding that there was no increase in hazard?*

This question is answered in the affirmative.

Regardless of the academic question as to where the burden of proof lies, the defendant did establish by the evidence, uncontradicted, that the fireworks in fact did increase the hazard. The evidence disclosed that the fire originated as the result of such increase of hazard and from the very merchandise which was added to the stock. The ordinary merchandise carried by the establishment was of the hardware variety consisting of garden and lawn tools, mowers, etc. The court concluded because "there was on the premises gasoline contained in demonstrator lawnmowers and in cans on the premises; that there was also carried in stock an inflammable fluid in the nature of kerosene for the purpose of starting charcoal fires and to be sold for that purpose, and also matches were carried in stock; that the carrying of the fireworks did not in fact in view of the foregoing facts increase the hazard; * * * "

The evidence discloses that the gasoline was not for sale and was not exposed for sale but was kept in two cans in the basement for the purpose of demonstrating lawnmowers. There was also gasoline in the demonstrator lawnmower. The charcoal lighter fluid was contained in screw-type cans. This being the usual merchandise normally carried in the type of business being

conducted, it is not to be compared with the hazard of an open display of fireworks. The fireworks by demonstration to the court were conclusively shown to be highly inflammable and explosive in character. That they have a particular appeal to children is a matter of common knowledge, explicitly demonstrated in this case. The evidence, therefore, does not support the conclusion of the court that there was no actual increase in the hazard. If the offering and display of a stock of fireworks was not an increase in the ordinary hazards of a hardware store, it is difficult to conceive what would be. Where the provisions of a policy are couched in plain and unambiguous language and do not contravene some principle of public policy, we have no right to relieve one of the parties to the contract from its disadvantageous terms by a forced construction or interpretation of its provisions. It must be given the meaning which a person of ordinary intelligence would attach to them. *General Accident Fire and Life Assurance Corp. v. Heller,* 127 Colo. 64, 253 P. (2d) 966. See also *Saint Paul-Mercury Indemnity Co. v. Rutland,* 225 F. (2d) 689; *Swanbrough v. United Commercial Travelers,* 66 Colo. 384, 181 Pac. 204; *Brown v. Knights of the Protected Ark,* 43 Colo. 289, 96 Pac. 450.

Second: *Was the court correct in concluding that the legality or illegality of the fireworks was irrelevant and immaterial?*

This question is answered in the negative.

■ The action against the London Company involved a policy covering only the neon sign. That policy, unlike the Standard Marine contract, provided that coverage would not be had *if the loss resulted from illegal trade.* Thus the question of the legality of stocking and selling fireworks was directly the issue in that suit, and warranted a specific finding on that point. In addition, the question of legality became material in the other actions when the court found that the parties had contemplated the stocking of merchandise of this character in the usual

course of plaintiff's business. Courts will not read into a contract contemplation that one of the parties will do an illegal act. Colorado by statute, C.R.S. '53, 53-5-1 to 8, has made illegal the sale of fireworks and therein enumerated the broad categories of prohibited items. It was shown by expert testimony and demonstrative evidence that the class of fireworks contained in plaintiff's display were of the prohibited variety consisting in the main of black gun powder. Some of the fireworks contained as much as two cubic inches of the explosive. In *Rabinovitz v. National Fire Ins. Co.* and *Rabinovitz v. Standard Fire Ins. Co.*, 258 Mass. 508, 155 N.E. 435 (involving the keeping of firecrackers which contained gunpowder), it was said:

"It is a matter of common knowledge that the keeping and storage of gunpowder in a building increased the risk. If so kept *in violation of law* and in violation of the terms of the policy, the insurer is not liable under the contract of insurance. * * *

" * * * It follows that the motion of the defendant in each case that a verdict be directed in its favor should have been allowed." (Emphasis supplied.)

The storage of gasoline and alcohol for use in *illegal distillery* was held to be in violation of an increase of hazard clause in *Miller v. Union Assurance Soc., Ltd.*, 39 F. (2d) 25.

Ordinarily in the case involving the London Company we should remand the case for a new trial and for a finding by the court on the point of the legality of the fireworks since this court is not a fact finding body. Such a course would be futile in this case, however, because there is no evidence in the record to support the legality of the explosives except the testimony of the wholesaler who contended that all fireworks were basically "sparklers" or "torches" and that these two classes of fireworks were permitted by law. We have recently held in *State v. Young,* 139 Colo. ......, 339 P. (2d) 672, that the list of excluded items permitted to be

sold were not examples of a broad class but are restrictive to the items mentioned. The court further said:

"The term 'fireworks' has a meaning which is well and quite generally understood. It calls to mind the many products and devices designed for display or celebration purposes and which explode or burn and explode and traditionally are used in the celebration of Independence Day or other holidays. Furthermore, we believe that the selection and use by the Legislature of this term was proper since it has a common and well understood meaning. Webster's New Collegiate Dictionary defines the terms as follows:

" 'A device for producing a striking display, as of light, noise, or smoke, by the combustion of explosive or inflammable composition.'

"The above definition is not unlike the legal one which has been adopted by the General Assembly. Both are inclusive of items which produce a visual or auditory sensation by combustion or explosion. The list of examples contained in the statute is by way of illustration and not of limitation and is not to be given a strained construction. * * * "

Thus the court on retrial could not with propriety find these items to be legal and they, therefore, come within the prohibition of the London Company contract.

The judgments are reversed and the causes remanded with directions to dismiss the actions.

Mr. Justice Frantz does not participate.