Harry Gittleson, J.
The plaintiffs instituted this action to recover the sum of $6,000 predicated upon a fire insurance policy issued by the defendant to “ The Estate of Giovanni Ferraiolo ” on December 17, 1959, for a period expiring one year thereafter affecting premises known as 1250 — 60th 'Street, Brooklyn, New York.
On the 16th of March, 1960, while the fire policy was in effect, the premises were destroyed by fire. The following day, through Messrs. Fenner and Gravitz, a notice of loss was mailed to defendant. The latter caused an immediate investigation to be conducted through its appointed adjuster, Mr. Schoeppler. On May 5, 1960, the amount of the loss was ascertained and sometime within -a week thereafter fixed at $6,000, the face amount of the policy.
In the interim, the adjuster ascertained that one, Mary Raimundo, had an interest in the property. He communicated that information to Messrs. Fenner and Gravitz. Several talks were had between them which resulted in an agreement to settle the loss for $6,000 upon the receipt of appropriate documents. These documents, namely, a proof of loss, a fire policy, copy of a mortgage, letters of administration, and a request that ‘ ‘ check be made out to mortgagee only” were forwarded to the defendant on May 5,1960.
On June 7,1960, these documents were returned to the senders with a covering letter that recited:
‘‘It appears from recent developments that this insured wasn’t the owner of this property at the time the alleged loss occurred nor does it appear to have any other insurable interest at the time of the loss.
*153 “Accordingly, we take no further steps herein until our investigation has been fully completed.”
No further negotiations were -in fact had between the parties. This action followed.
I hold that the defendant is bound by the terms of its rejection. It must prevail, if at all, in this action upon the grounds set forth in said letter, namely, that the insured was neither “ the owner of the property ’ ’ nor had an ‘ ‘ insurable interest ’ ’ at the time the loss occurred. (Modern Music Shop v. Concordia Fire Ins. Co., 131 Misc. 305, 310; Wachtel v. Equitable Life Assur. Soc., 266 N. Y. 345, 352.)
The defendant urges that its declination 1 ‘ is nothing more than a waiver of the defects in the proof of loss itself and not as a waiver of a defense to the policy. ’ ’ Even if this court were to adopt the defendant’s view, an analysis of the testimony affecting all other defenses interposed herein would lead to the same legal conclusion.
I find that neither the plaintiffs nor Messrs. Fenner and Gravitz knowingly indulged in either unfair dealing or bad faith in presenting the proof of claim. “ Courts have been assiduous to prevent the use of the clause to bar a recovery where the alleged fraud or false swearing were not intentional * * * although mistakenly, held by the insured.” (Domagalski v. Springfield Fire & Marine Ins. Co., 218 App. Div. 187, 189.) In the light of the several conversations held between the adjusters during the week of May 5 and May 12, 1960, and the documents forwarded and received by the defendant on May 12, 1960, it is sufficiently persuasive to conclude that the defendant was apprised of the interest of Mary Raimondo in the subject property and the plaintiffs’ status is that of a mortgagee. No other conclusion is justified especially if one peruses the question propounded to and answered by the defendant’s adjuster upon the examination before trial, to wit: “ Q. When did you first learn who the owner of 1250 — 60th Street, Brooklyn, New York was on March 16,1960? (The date of the fire.) A. Sometime between March 21, 1960, and the end of March, 1960, in my discussions with Fenner.”
The documents enclosed substantiate the finding that the defendant’s adjuster was advised of plaintiffs’ status as mortgagee. Otherwise, it would have served no purpose to enclose with the proof of loss a “ copy of mortgage ” and letter from administrator “ requesting check to he made out to mortgagee only. ’ ’
The plaintiffs, if covered by the original policy, would not lose their insurable interest merely by failing to cause an indorse *154 ment to be affixed to the policy. They would still retain their insurable interest to the extent of their purchase-money mortgage. (Brewer v. North Riv. Ins. Co., 137 N. Y. S. 2d 909; Washington Assur. Co. v. Duncan, 207 Misc. 1042; Ardon Constr. Corp. v. Firemen’s Ins. Co., 16 Misc 2d 483.)
The bond and mortgage was discharged and satisfied on October 28,1960, about seven months after the fire loss occurred. The defendant rejected the plaintiffs’ claim on June 7, 1960, thereby effectually extinguishing its right to subrogation. (6 Appleman, Insurance Law and Practice, p. 559, § 4073; Bryan v. Home Ins. Co. of N. Y., 124 Pa. Super. Ct. 85 [1936]; Young Men’s Lyceum of Tarrytown v. National Ben Franklin Fire Ins. Co., 177 App. Div. 351; see, also, O’Neil v. Franklin Fire Ins. Co., 159 App. Div. 313, affd. 216 N. Y. 692.)
We thus turn to the remaining issue raised by the defendant in its letter rejecting the claim. It is true that “ The name of the insured in [a] policy is not always important if the intent to cover the risk is clear. ” (Matter of Lipshitz v. Hotel Charles, 226 App. Div. 839, 840.)
However, a contract of insurance against fire as a general rule is a mere personal contract between the insured and the underwriter to indemnify the former against the loss he may sustain. (Cromwell v. Brooklyn Fire, 44 N. Y. 42, 47; Matter of Largo Prods. v. Cohen, 8 Misc 2d 594, 595; Rath v. Aerovias etc., 205 Misc. 135; Mercantile Credit Corp. v. Downey, 37 Misc 2d 522.) “ Contracts of insurance are construed so as to give effect to the intent of the parties as indicated by the language employed. They do not in any respect differ from other written instruments * * * courts have no right under the pretense of interpretation to nullify a material provision inserted for the reasonable protection of the insurers, and thus exercise a dispensing power in favor of the insured.” (Savage v. Howard Ins. Co., 52 N. Y. 502, 504, 508.)
The plaintiffs would have this court interpret the name of the insured, to wit: ‘ ‘ The Estate of Giovanni Ferraiolo ’ ’ to include the intestate’s heirs at law. Even though this court would be so inclined, it possesses no such power unless the record discloses that such inclusion was within the contemplation and intent of the contracting parties at the inception of the fire insurance policy. Unfortunately for the plaintiffs in this case, there is no evidence establishing any such intent. Unlike the testimony in the Clinton v. Hope Ins. Co. case (45 N. Y. 454) neither the underwriter nor his agents were advised that the policy was intended to protect the plaintiffs. In my view, this omission is fatal to the plaintiffs’ cause.
*155 An examination of the distinguishing features incident to ownership of chattels and real property by an intestate’s administrator is enlightening. There is no doubt that an executor or administrator may effect an insurance of the personal chattels of the deceased whom they represent. The title to such property vests in the personal representatives; but it is quite different with the land that descends to the heirs — in common parlance, as well as in legal language — the estate of a deceased person who has died intestate, his effects are held in trust by his executors or administrators. The lands which the heirs take by descent in the case of an intestacy are held in their own right as owners and are no part of any trust estate. (Herkimer v. Rice, 27 N. Y. 163.)
Thus, it would appear that the administrator in the case at bar had no “ insurable interest.” He was not so situated with reference to the property that he would be liable to lose if it were destroyed or injured by the peril insured. (Berry v. American Cent. Ins. Co., 132 N. Y. 49, 56.) The defendant has no obligation under the policy in suit unless it had either waived its rights or is estopped to raise them. “ Waiver is ‘ voluntary and intentional relinquishment or abandonment of a known existing legal right, advantage, benefit, claim or privilege, which except for such waiver the party would have enjoyed ’.” (Davison v. Klaess, 280 N. Y. 252, 261.) An estoppel arises from a person’s act or declaration to another who rightfully relying thereon changes his position to his detriment. (Metropolitan Life Ins. Co. v. Childs Co., 230 N. Y. 285.) No such estoppel is apparent in this ease. The defendant here became aware of the administrator’s noninsurable interest after the loss was sustained. An estoppel cannot be spelled out of the receipt of the premium from the administrator even though he be one of the plaintiffs. Such receipt did not cast the defendant into an area where it was obliged to make inquiry as to the one who had, in fact, an insurable interest. It neither indulged in any act nor uttered any declaration upon which plaintiffs relied to their detriment. Where a company, after a loss, first obtains knowledge of the breach of a condition precedent which prevents the risk of the policy from attaching, a waiver of estoppel cannot be predicated upon its retention of the premium.
Upon consideration of all the evidence and exhibits, I find in favor of the defendant and against the plaintiffs and direct that judgment be entered dismissing the complaint upon the merits.