216 A.2d 139.

AMERICAN EQUITABLE ASSURANCE COMPANY OF NEW YORK *vs.* PIONEER COOPERATIVE FIRE INSURANCE COMPANY.

JANUARY 18, 1966.

PRESENT: Roberts, C. J., Paolino and Joslin, JJ.

JOSLIN, J. This action of assumpsit brought on a fire insurance policy was tried to a justice of the superior court sitting without a jury and resulted in a decision for the

plaintiff in the amount of $2,181.60. The case is here on the defendant's exception to the decision.

The facts are not in dispute. On February 5, 1962 Pioneer Cooperative Fire Insurance Company, the defendant, issued a standard fire insurance policy in the form prescribed by statute with both extended coverage and all physical risks (Form No. 16) endorsements insuring the interest of Norman Cardinale in a dwelling house located in the city of Cranston and owned by him against loss from the hazards therein stated to the extent of $4,500. Less than a year later on January 15, 1963, without notification to Pioneer, Cardinale conveyed the insured property to Albert E. Clements. A portion of the purchase price was paid in cash and payment of the deferred balance was secured by a purchase money mortgage. Clements promptly insured both his own interest in the property and that of Cardinale as mortgagee against loss by fire with American Equitable Assurance Company of New York, the plaintiff.

On February 2, 1963, while both policies were in effect and Clements and Cardinale were still owner and mortgagee, respectively, the premises were destroyed by fire. Pioneer denied liability giving as reason that the sale by Cardinale voided the policy issued by it, and American paid the full amount of the loss to Clements and Cardinale as their respective interests appeared. This suit is brought under Cardinale's assignment to American of his claim against Pioneer, and it is agreed that liability, if there be any, is in the amount of $2,181.60.

The substantial question is whether a change in an assured's interest in the insured property from owner to purchase money mortgagee voids a fire policy.

The authorities do not usually distinguish between an alienation where there is no retention of an interest and one where the original owner takes back a purchase money mortgage. In either event it is generally held that the transaction is a sale which under the terms of the usual

type of policy terminates an insurer's liability. *Tittemore* v. *Vermont Mutual Fire Ins. Co.*, 20 Vt. 546; *Dudley* v. *Continental Ins. Co.*, 82 N. H. 167; 4 Appleman, Insurance Law & Practice §2750, p. 671; 3 Richards, Insurance (5th ed.) §518, p. 1688.

The courts in reaching this result frequently speak of the moral risk and the hazard of loss, both of which they say may increase if ownership of the insured property is changed without the consent of the insurer. This is the kind of language used in *Hoxsie* v. *Providence Mutual Fire Ins. Co.*, 6 R. I. 517, where, in holding that a transfer of insured property voided a fire policy, this court, speaking through Chief Justice Ames, said at page 529:

> "It is as old as the law of fire insurance in England, that a fire policy, being a personal contract of indemnity between the insurer and insured by which the interest of the latter in the subject of insurance is alone covered, does not pass, upon alienation of the subject, as incident thereto, nor, without the consent of the insurer, upon an alienation of the subject, by an assignment of the policy to the alienee. From the very nature of such a contract, it follows, in such case, that upon the determination, before loss, of the interest of the insured, the policy becomes a nullity."

Notwithstanding the apparent reliance of the courts on "moral risk" and "increased hazard" arguments, the decisions voiding fire policies where there has been a transfer of the insured property are not grounded on that principle of law of contracts which makes ineffective the substitution of a right of an assignee for that of the assignor, when to do so varies materially the duty of the obligor or increases materially the burden or risk imposed upon him by his contract. See Restatement, Contracts §151 (a), p. 181. Instead, they are predicated on specific contractual terms voiding a policy upon alienation of the subject of insurance, and expressions such as we quote from *Hoxsie* are intended as explanatory of the purposes for the inclusion in the

insurance contract of a stipulation against alienation, *Bowman* v. *Franklin Fire Ins. Co.*, 40 Md. 620, 631, or as justification of the reasonableness and validity of a voiding provision. *Wiley* v. *London & Lancashire Fire Ins. Co.*, 89 Conn. 35. The same may be said of our own decisions for in *Hoxsie* the court's judgment that the policy be voided, notwithstanding the "moral risk," was predicated solely on the policy stipulation making it *"ipso facto* void" upon alienation by sale or otherwise. And in *Hazard* v. *Franklin Mutual Fire Ins. Co.*, 7 R. I. 429, a similar conclusion was premised on the "plain condition of the policy."

It was not long after the decisions in *Hoxsie* and in *Hazard* that the legislature prescribed by statute, P. L. 1895, chap. 1379, a standard form of fire insurance policy. With that enactment the substance of the policy provisions upon which the earlier decisions rested was required to be included in each fire policy issued on property in this state, the act providing that such a contract of insurance would become void "if any change, other than by the death of an insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard) whether by legal process or judgment or by voluntary act of the insured, or otherwise * * *."

So long as the voiding stipulation was included as one of the prescribed provisions of the standard fire policy, there was no question that a change in the interest, title or possession of the subject of insurance would void the policy and, as already observed, by the great weight of authority it was held that a sale-purchase money mortgage transaction constituted a change in interest within the statutory contemplation. In 1945, however, by P. L. 1945, chap. 1623 (now G. L. 1956, §27-5-3), the then statutory standard form of policy was revised and among the changes provided by the legislature was the elimination of the stipulation terminating liability upon alienation of the insured property. The significance of that deletion was con-

sidered by us in *Osborne* v. *Pacific Ins. Co.*, 91 R. I. 469. There, just as in *Hoxsie* and *Hazard,* our decision was predicated on terms of the policy rather than on the peculiar nature of the insurance contract, and we said at page 473:

> "When our legislature provided by statute for a standard form of fire insurance policy, required the use of the prescribed form in contracts of fire insurance, and authorized the parties to such contracts to include therein in writing provisions not inconsistent with those set out in the prescribed form, it intended that these contracts of insurance were to be reduced to writing and that the rights and liabilities of the parties thereto would be ascertained and determined in accord with the terms set out therein. * * * To warrant holding that a contract of insurance had been terminated by reason of an alienation of the covered property and a loss of the insured's insurable interest, a provision therefor would necessarily have to be contained in the contract."

In *Osborne* we held that a contract of insurance issued in the form prescribed by chap. 1623 was not voided by reason of an alienation of the covered property. If that be the case, and in *Osborne* the original owner conveyed without retaining any interest in the property, then surely the *Osborne* result must obtain if the original owner conveys and retains an interest in the property as a purchase money mortgagee, an interest which clearly is insurable.

This case then is controlled by *Osborne*. The Pioneer policy sued on is in the standard 1945 form and, since it contains no stipulation terminating liability in the event of an alienation, Pioneer's liability for the hazard insured against was not terminated when Cardinale conveyed the insured property to Clements and took back a purchase money mortgage.

To our knowledge the question we decide as it relates to a fire policy which contains no stipulation making it void in the event of an alienation has not been passed on other

than in New York and there not by its highest tribunal. The New York courts where the question has arisen have concluded as do we. *Washington Assurance Co.* v. *Duncan*, 207 Misc. 1042; *Brewer* v. *North River Ins. Co.*, 137 N.Y.S. 2d 909; *Ardon Construction Corp.* v. *Firemen's Ins. Co.*, 16 Misc.2d 483, aff'd 11 A.D.2d 766; *Ferraiolo* v. *Commonwealth Ins. Co.*, 39 Misc.2d 151, aff'd 42 Misc.2d 228.

The defendant's remaining contentions are without merit in the circumstances of this case for the reason that the policy provisions upon which it relies are either waived or voided by other stipulations in the insurance contract.

The defendant's exception is overruled, and the case is remitted to the superior court for entry of judgment on the decision.

*Edwards & Angell, Richard M. Borod,* for plaintiff.

*Robert C. Hogan,* for defendant.