BLACKHAWK–CENTRAL CITY
SANITATION DISTRICT,
Plaintiff,

v.

AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, a New York corporation, and St. Paul Fire and Marine Insurance Company, a Minnesota corporation, Defendants.

Nos. 93–B–1252, 93–B–1282.

United States District Court,
D. Colorado.

June 24, 1994.

Timothy J. Flanagan, Kutak Rock, Jon T. Bradley, Jerald J. Devitt, Myers Hoppin Bradley & Devitt, P.C., Denver, CO, for plaintiff.

Arthur R. Karstaedt, Hall & Evans, L.L.C., Denver, CO, Robert J. Bates, Jr., Pope & John, Ltd., Chicago, IL, for American Guarantee.

Douglas J. Cox, Cooper & Kelley, P.C., Denver, CO, for St. Paul Fire.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Plaintiff Blackhawk–Central City Sanitation District (the District) moves pursuant to Federal Rule of Civil Procedure 56 for partial summary judgment on the issue of defendants' duty to defend the District in underlying federal litigation. I hold that the pollution exclusion clauses in both defendants' insurance policies are fully enforceable in this action. American Guarantee and Liability Insurance Company (American), however, also provides coverage for personal injury to which the pollution exclusion clauses do not apply. Hence, I further hold that because the personal injury coverage may cover claims for trespass and nuisance in the underlying litigation, American has a duty to defend against these claims. Thus, as more fully explained below, the District's motion will be granted in part and denied in part.

### I.

This suit arises out of American Guarantee and Liability Insurance Company (American)'s and St. Paul Fire and Marine Insurance Company (St. Paul)'s reliance on insurance policies issued to the District in denying a duty to defend the District on claims asserted against the District in *Old Timer, Inc. v. Blackhawk/Central City Sanitation District,* Civil Action No. 93–B–249 (Old Timer litigation), currently pending before me.

The District is a quasi-municipal corporation, organized pursuant to Colo.Rev.Stat.

§ 32–4–401, *et seq.*, which owns and operates a sewage treatment facility on North Clear Creek in Blackhawk, Colorado. This facility treats sanitary sewer waste delivered from the municipalities of Central City and Blackhawk and, pursuant to a permit issued by the Colorado Department of Health, Water Control Division, discharges effluent into North Clear Creek.

During the time frame at issue in the Old Timer litigation, the District paid premiums in consideration for comprehensive general liability (CGL) insurance coverage under several policies provided by defendants American and St. Paul. In this motion, the District seeks a determination whether the defendants are contractually bound to defend the District in the Old Timer litigation in accordance with the insurance policies. The broader question whether these defendants have an obligation to indemnify the District for liability arising from the Old Timer litigation is not before me.

Venue for this action is proper as the District is a resident of, and the claim covered by these policies arose within, the State of Colorado. Jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332 with an amount in controversy exceeding $50,000. The jurisdiction of this court was implicated by defendants' Notice of Removal pursuant to 28 U.S.C. §§ 1441, 1332, and 1446.

## II.

**A.** *Old Timer Litigation:* On January 29, 1993, the Old Timer litigation was filed against the District and others in the United States District Court for the District of Colorado by the owners and owners' lessee of property downstream from the District's waste treatment facility (the Old Timer plaintiffs). The general allegations in the Old Timer complaint include that the District has, and continues to, discharge suspended solids, fecal coliform bacteria, ammonia, residual chlorine, and other chemicals and substances in amounts in excess of levels permitted by law. The complaint alleges that the substances contained in the District's effluent constitute "pollutants" within the meaning of the Clean Water Act § 502(6), 33 U.S.C. § 1362(6).

The Old Timer complaint alleges that, as a result of the excessive releases of permitted levels of effluent, the Old Timer plaintiffs have suffered a multitude of personal injuries and property damages. The Old Timer Complaint, while not specific as to dates when damages occurred, implicates a series of excessive effluent discharges by the District beginning in 1985 and continuing through the present. The complaint alleges that the District has violated its permit daily since at least November 1, 1990. The complaint further alleges that the District's conduct in violating and disregarding permit limitations was knowing, willful and negligent.

The Old Timer complaint seeks to impose civil penalties, payable to the United States Government, upon the District and recover damages to property, persons, and business. Specifically, the Old Timer plaintiffs seek recovery upon theories of: 1) past, present and continuing trespass; 2) public and private nuisance; 3) misrepresentation and concealment; 4) outrageous conduct; and 5) exemplary and punitive damages.

**B.** *The Insurance Policies:* The insurance policies issued by defendants purport to grant broad coverage in protecting the insured, the District, from liability resulting from bodily injury or property damage to another and arising out of an "accident" or "occurrence" taking place within the terms of the policies regardless of whether a claim is made before or after expiration of the policy itself. Significantly, the policies of both defendants contain pollution exclusion clauses, but three of the American policies contain coverage for personal injury that does not fall under the pollution exclusion clause.

American issued six CGL policies to the District, each for one year, running February to February, beginning February 18, 1987 through February 18, 1993. These policies are consecutively numbered as CPO–38–53–743–00 through CPO–38–53–743–05. The six American policies are listed below:

| Policy No. | Policy Period | Hereinafter |
|---|---|---|
| CPO–38–53–743–00 | 2/18/87–2/18/88 | Policy 00 |
| CPO–38–53–743–01 | 2/18/88–2/18/89 | Policy 01 |
| CPO–38–53–743–02 | 2/18/89–2/18/90 | Policy 02 |
| CPO–38–53–743–03 | 2/18/90–2/18/91 | Policy 03 |
| CPO–38–53–743–04 | 2/18/91–2/18/92 | Policy 04 |
| CPO–38–53–743–05 | 2/18/92–2/18/93 | Policy 05 |

Because American Policy 00, Policy 01, and Policy 02 are substantially similar, these three policies are frequently referred to as the "first three American policies." Also, because American Policy 03, Policy 04, and Policy 05 are substantially similar, these three policies are frequently referred to as the "last three American policies."

St. Paul issued two CGL policies of insurance to the District, Policy No. 583ZA3251, effective from February 18, 1983 through February 18, 1986 (Policy ZA), and Policy No. CK08300195, effective from February 18, 1986 through February 18, 1987 (Policy CK).

## III.

Summary judgment is appropriate if the evidence demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c). Affidavits and evidence offered by a nonmovant must create a genuine issue for trial; viewing the evidence in the light most favorable to the nonmovant, it is not enough that the evidence be "merely colorable" or anything short of "significantly probative." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir.1991) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986)). When the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Id.; see also Anderson*, 477 U.S. at 248–52, 106 S.Ct. at 2510–2512.

The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the non-movant for a finder of fact to return a verdict in that party's favor. *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2511–12.

## IV.

■ The duty to defend is broader than the duty to indemnify. An insurer seeking to avoid its duty to defend bears a heavy burden. An insurer has a duty to defend where the underlying complaint against the insured alleges any facts that might fall within the coverage of the policy. *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083 (Colo.1991). It is the factual allegations in the complaint, and not the legal claims, that determine an insurer's duty. *Gerrity Co. v. CIGNA Property & Cas. Ins. Co.*, 860 P.2d 606, 607 (Colo.App.1993). If there is doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim. *Hecla Mining*, 811 P.2d at 1089.

■ The determination of a duty to defend in this case depends on the terms in the insurance policies, and their interpretation based upon settled principles of contract interpretation. *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1090 (Colo.1991); *Marez v. Dairyland Ins. Co.*, 638 P.2d 286, 288–89 (Colo.1981). I must follow Colorado law when interpreting the CGL policies at issue in this case. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Broderick Inv. Co. v. Hartford Acc. & Indem. Co.*, 954 F.2d 601, 606 (10th Cir.1992). Under Colorado law, the plain language of the contract controls. *Chacon v. American Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo.1990). The court is not to rewrite or override the intention of the parties which is expressed by clear unambiguous language in the contract. *J.S. Enterprises, Inc. v. Continental Cas. Co.*, 825 P.2d 1020, 1023 (Colo.App.1991).

■ The Colorado Supreme Court has held that "[a] provision in a policy is ambiguous when it is reasonably susceptible to more than one meaning." *Northern Ins. Co. of New York v. Ekstrom*, 784 P.2d 320, 322 (Colo.1989). Any ambiguities in a policy must be construed against the insurer. Further, when there are two or more reasonable interpretations of a clause, a court must adopt an interpretation that provides coverage. *Chacon*, 788 P.2d at 750.

The issue before me is whether the District has been sued in the Old Timer litigation for acts which may fall within the breadth of coverage provided by defendants' insurance policies. Both insurers seek to avoid their defense obligations by arguing that the pollution exclusion clauses within the policies bar coverage. A pollution exclusion clause appears in some form in each of the subject policies.

■ "To benefit from an exclusionary provision in a particular contract of insurance

588

the insurer must establish that the exemption claimed applies in the particular case and that the exclusions are not subject to any other reasonable interpretations." *American Family Mut. Ins. Co. v. Johnson*, 816 P.2d 952, 953 (Colo.1991) (citing *Hecla*, 811 P.2d at 1090.) The standard for determining coverage when a dispute has arisen between an insurer and its insured is not what an expert in interpreting policies or clauses would consider their meaning to be, but rather what an ordinary person would reasonably consider the boundaries of coverage to be. *See, Standard Marine Ins. Co. v. Peck*, 140 Colo. 56, 342 P.2d 661, 663 (1959).

### V.

#### A. *The American Policies:*

#### 1) Pollution Exclusion Clauses:

Because of similarities in the language of the first three American policies, these policies will be discussed together. The first three American policies contain an absolute pollution exclusion. The absolute pollution exclusion in Policy 00 and Policy 01 is contained in an endorsement and provides:

The exclusion relating to the discharge, disposal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants is replaced by the following:

This insurance does not apply:

1. to bodily injury, personal injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants, or pollutants or any solid, liquid, gaseous or thermal irritant or contaminant including materials to be recycled, reconditioned or reclaimed, into or upon land, the atmosphere or any water course or body of water.

(American Ex. A; District Ex. B.)

The absolute pollution exclusion in Policy 02 is contained in an endorsement and provides:

Exclusion f., of Section I, Coverage A, which relates to "bodily injury" and "property damage" arising out of actual, alleged,

or threatened discharge, dispersal, release, or escape of pollutants, is replaced by the following: f. (1) "Bodily Injury," "personal injury," or "property damage" arising out of the actual, alleged, or threatened release, or escape of pollutants, into or upon land, the atmosphere, or any body of water, water course, or ground water.

.    .    .    .    .

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

(American Ex. B; District Ex. B.)

Relying on *Simon v. Shelter General Ins. Co.*, 842 P.2d 236 (Colo.1992), the District argues that I should disregard the absolute pollution exclusion found in these endorsements because they conflict with the pollution exclusion clauses found in the body of the policies. In *Simon*, the court recognized an exception to the general rule that endorsement provisions prevail over provisions in the body of the policy when there is a conflict between provisions contained in the body of the policy and provisions contained in the endorsement. The court held that where the endorsement contains no separate signatures, and there is no other evidence or allegations that the endorsement had been separately negotiated, the conflicting provisions should be construed against the insurer. *Simon*, 842 P.2d at 241–42.

*Simon* involved an insurance policy which, in the body of the policy, excepted from an exclusion certain warranties, while an endorsement excluded coverage for damage arising from reliance upon warranties. *Id.* at 240. The endorsement in *Simon* did not state that its provisions replaced the conflicting provision in the body of the policy. The two conflicting provisions purported to exist simultaneously. Consequently, the court found a conflict and continued with an analysis to determine which conflicting provision controlled. I conclude that *Simon* does not apply to the first three American policies because there is no similar conflict.

■ Whether a conflict exists in an insurance contract must be ascertained by reference to what meaning a person of ordinary intelligence would attach to the provisions. *Simon*, 842 P.2d at 240; *Standard Marine Ins. Co. v. Peck*, 140 Colo. 56, 342 P.2d 661, 663 (1959). The endorsements in the first three American policies contain the language "is replaced by the following...." Clearly, a person of ordinary intelligence would conclude that the absolute pollution exclusion found in the endorsements to the first three American policies *has replaced* the pollution exclusion in the body of the policies. Therefore, the absolute pollution exclusion clauses located in the endorsements control.

The last three American policies also contain absolute pollution exclusion provisions. The absolute pollution exclusion in Policy 03 and Policy 04 is contained in Section I of the body of the policies and provides, in relevant part, as follows:

This insurance does not apply to:

f. (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

(a) At or from premises you own, rent or occupy;

(b) At or from any site or location used by or for you or others for the handling, storage, disposal, processing or treatment of waste;

. . . . .

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

(American Ex. C; District Ex. B.)

The absolute pollution exclusion in Policy 05 is contained in Section I of the body of the policy and provides, in relevant part, as follows:

This insurance does not apply to:

f. (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or at any time owned or occupied by, or rented or loaned to, any insured;

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

. . . . .

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

(American Ex. D; District Ex. B.)

■ The District challenges the enforceability of these absolute pollution exclusion clauses as being overly broad and argues that equity requires coverage be granted. I disagree. The language of the clauses clearly and unambiguously exclude all pollution damage from coverage.

■ Next, the District asserts that the words "pollutant," "irritants" and "contaminants" in these absolute pollution exclusion clauses are unreasonably broad and ambiguous. Again, I disagree. Relying, as I must, on the allegation in the Old Timer complaint, the District is alleged to have discharged "pollutants." Moreover, there is no genuine dispute that the effluents discharged by the District constitute pollutants. *Compare Metro Wastewater Reclamation District v. Continental Cas. Co.*, 834 F.Supp. 1254, 1260 (D.Colo.1993) (finding a genuine issue of fact as to whether sewage sludge falls within the plain meaning of "waste materials or other irritants, contaminants or pollutants" where plaintiff supplied evidence creating a genuine issue of fact). Although I conclude that reference to the pollution exclusion provisions alone may insulate American from its duty to defend the District in the Old Timer litigation, that duty to defend is found in other provisions of the last three American policies.

### 2) Personal Injury Theory

The last three American policies provide separate coverage for personal injury. The pollution exclusion clauses in the last three

American Policies only apply to liability for "bodily injury and property damage"; they do not apply to coverage for "personal injury." The District argues that Old Timer's claims for trespass and nuisance are covered under the policies' separate personal injury coverage. Because I conclude the personal injury coverage may apply to the Old Timer plaintiffs' claims for trespass and nuisance, American's duty to defend these claims is invoked.

Here, coverage for "personal injury" liability depends not on the type of injury sustained, but whether the injuries arose from the commission of certain offenses. Policy 03 and 04 define "personal injury," in relevant part:

> "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

> .  .  .  .  .

> c. Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies.

(American Ex. E; District Ex. B.)

█ Policy 05 defines "personal injury" slightly differently from the earlier two policies, and provides, in relevant part:

> "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

> .  .  .  .  .

> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor.

(American Ex. F; District Ex. B.)

American contends that this modification requires that the eviction, entry or invasion be by or on behalf of the owner, landlord or lessor of the premises. The District contends that the modification can be read to modify, not the party who evicts, enters or invades, but rather on whose authority the current occupant holds the property. I

agree that the modification is ambiguous and, thus, it will be construed in favor of providing coverage.

American argues that the Old Timer complaint lacks the necessary intent allegation to constitute a "wrongful entry." American relies on *Titan Holdings Syndicate, Inc. v. City of Keene, N.H.*, 898 F.2d 265 (1st Cir. 1990), in support of this argument. The *Titan* court, applying New Hampshire law, addressed whether the migration of fumes, noise and light from a sewage treatment plant constitutes wrongful entry. The court concluded that the complaint lacked allegations of an intentional invasion necessary to support a trespass action. *Id.* at 272. Here, the Old Timer complaint specifically alleges that a trespass arises from the discharge of pollutants into North Clear Creek which traveled onto, continue to travel onto, and remain upon the plaintiff's land. Moreover, Colorado law has no absolute requirement of an intentional invasion. Under Colorado law, "[a] landowner who sets in motion a force, which, in the usual course of events, will damage property of another is guilty of trespass on such property." *Miller v. Carnation Co.*, 33 Colo.App. 62, 516 P.2d 661, 664 (1973).

█ The underlying claim for nuisance alleges interference with the use and enjoyment of land caused by allowing pollutants to enter upon and remain upon the land. American provides no support for its contention that intent is an element of a nuisance claim under Colorado law.

American further argues that wrongful entry and eviction, unlike trespass and nuisance, involve conduct designed to take possession of property. Again, I disagree and find "wrongful entry" substantially analogous with trespass. *See also Titan Holdings Syndicate, Inc. v. City of Keene, N.H.*, 898 F.2d 265, 272 (1st Cir.1990); *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1041 (7th Cir.1992); *City of Edgerton v. General Cas. Co.*, 172 Wis.2d 518, 493 N.W.2d 768, 780–81 (Wis.App.1992).

I conclude that a person of ordinary intelligence would have understood the term "wrongful entry" in the personal injury coverage to include the trespass and nuisance claims alleged in the Old Timer complaint. At the very least, the policy's use of the term "wrongful entry" is ambiguous and I must resolve any ambiguity in favor of coverage.

*Broderick Inv. Co. v. Hartford Accident & Indem. Co.,* 954 F.2d 601, 606 (10th Cir.1992). American, therefore, has a duty to defend the District in the Old Timer action for claims of trespass and nuisance pursuant to the personal injury coverage of the last three American policies.

## B. *St. Paul Policies:*

St. Paul's Policy ZA contains the following pollution exclusion:

> We won't cover injury or damage caused by the discharge, dispersal, release or escape of pollutants such as: smoke, vapor, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases; or waste material or other irritants or contaminants. But this exclusion won't apply to sudden accidents involving pollutants.

Policy ZA does not define "sudden accidents." The parties disagree as to the definition of this term and whether the term is ambiguous. The District argues that the interpretation of "sudden and accidental" applied by the Colorado Supreme Court in *Hecla Mining* should apply in this case. *See Hecla Mining Co. v. New Hampshire Ins. Co.,* 811 P.2d 1083 (Colo.1991). In *Hecla Mining* the Court held that the term "sudden" is ambiguous as it is susceptible to more than one reasonable definition; it can reasonably be defined to mean abrupt or immediate, but it can also be defined to mean unexpected and unintended. *Id.* at 1092. Thus, the Court construed the phrase against the insurer to mean unexpected and unintended. St. Paul argues that "sudden" should be given a temporal connotation meaning "abrupt and immediate."

 Regardless of which party's definition of "sudden" is applied in this case, the Old Timer complaint makes clear that the District's release of pollutants was no accident. The discharge was neither unintentional or unexpected. Rather, the discharges allegedly occurred routinely, knowingly, willfully and negligently in the regular course of business. Considering the allegations in the Old Timer complaint in light of the clear, plain and otherwise unambiguous language of the exclusionary clause, I am unable to conclude that coverage for these discharges may exist under St. Paul Policy ZA.

St. Paul Policy CK contains the same language as Policy ZA. However, the pollution exclusion is replaced by endorsement 6, which excludes coverage for "sudden accidents involving pollutants." As in the first three American policies, the Policy CK endorsement contains language stating: "the following *replaces* the Pollution exclusion. This change excludes coverage." (emphasis added). Thus, there is no conflict between the endorsement and the body of the policy and a person of ordinary intelligence would conclude that sudden accidents are not covered. The pollution exclusion in Policy CK is absolute. St. Paul has no duty to defend the District in the old Timer litigation.

Accordingly, it is ORDERED that the District's motion for summary judgment is GRANTED in part and DENIED in part:

1) summary judgment is GRANTED as to American's duty to defend the District in the Old Timer litigation for claims of trespass and nuisance;

2) summary judgment is DENIED as to St. Paul's duty to defend.