ZANETTI BUS LINES, INC., a Wyoming corporation, Appellant (Defendant below),

Pacific Intermountain Express Company, a Nevada corporation, and Nellie Horton, Administratrix of the Estate of Joe E. Weimer, Deceased (Defendants below),

**v.**

Roy G. LOGAN et al., Appellees (Plaintiffs below).

Nos. 3273–3305.

Supreme Court of Wyoming.

March 18, 1965.

See also 400 P.2d 488.

January, Gilchrist & Blunk, Denver, Colo., Swainson & Swainson, Cheyenne, W. Page Keeton, Austin, Tex., Harold Scott Baile, Philadelphia, Pa., for appellant.

Galicich & Hamm, John M. Anselmi, Rock Springs, Hirst & Applegate, Cheyenne, Nelson & Jackson, Venta, Bath & Murray, Rock Springs, for appellees.

Before PARKER, C. J., and HARNSBERGER and McINTYRE, JJ.

Mr. Chief Justice Parker delivered the opinion of the court.

These appeals grow out of thirty-three actions for injuries occasioned in a multiple-vehicle accident, twenty-nine of the cases being for personal injuries and four for wrongful death. All thirty-three suits were consolidated for trial on the issue of liability, the only question raised in the appeals. The defendants were the administratrix of the Estate of Joe E. Weimer, driver of a Buick automobile, Pacific Intermountain Express Company, and Zanetti Bus Lines, all made defendants on the theory of liability as joint tort-feasors. The jury returned verdicts in favor of all claimants and against Zanetti and Weimer's administratrix, from which Zanetti appealed, but in favor of P.I.E. and against the claimants, who have brought separate appeals, considered in another decision.

The accident occurred about 5:20 p. m., February 3, 1961, on U. S. Highway 30, some five and one-half miles west of Rock Springs. Three of the vehicles concerned were proceeding in an easterly direction, Weimer's Buick, followed by a Zanetti bus driven by Soltis, and this followed by a second Zanetti bus driven by Bucho. The fourth vehicle, a P.I.E. truck, was approaching from the opposite direction, going westerly. It was snowing slightly, the highway being extremely icy in the area of the accident and for some three or three and one-half miles west. Weimer experienced some difficulty in the Buick's control, the car fishtailing and later going across the highway in front of the oncoming truck, occasioning a collision with it. The truck thereafter proceeded to its wrong side and in front of the Bucho bus, from the crash of which all of the plaintiffs' injuries occurred. Meanwhile, the Soltis bus had been able to proceed easterly on its own side of the highway and avoid a crash. With respect to Zanetti, plaintiffs charged negligence of Bucho in driving at a dangerous, excessive, and unlawful rate of speed without regard to the icy condition of the highway; failure to maintain a proper lookout; disregarding or failure to observe Weimer's automobile; following more closely than was reasonable and prudent under the circumstances and existing traffic laws; and other incidental negligence.

The questions raised in the appeals relate to four alleged errors:

1. The trial court's instructing the jury that violation of § 31–108(a), W.S.1957, was evidence of negligence and a circumstance to be considered in determining whether or not Zanetti was negligent;

2. The overruling of Zanetti's motion for a directed verdict;

3. Refusal to give two of Zanetti's requested instructions; and

4. Refusal to grant motion for mistrial, which was based on the fact that one of the bailiffs had provided the jury with a dictionary during its deliberation.

Appellant's principal thesis is that the negligence of the driver of the Buick was the sole proximate cause of both collisions; that the jury evidently concluded the truck driver was rendered helpless to avoid the first collision; and that the jury would, except for the errors of the court, probably have reached a similar conclusion about Zanetti's alleged negligence. It is contended that the Bucho bus was not "following too closely" another vehicle in violation of the statute, but even if it was the second collision was not the kind that the statute was designed to guard against or that a reasonable man would have attempted to guard against by being further to the rear. In the development of this argument, it is contended that it was not the proximity of the Bucho bus to Soltis' which brought about the second collision but rather the proximity of the Bucho bus to the collision truck and that for these reasons there was between Weimer's Buick and the P.I.E.

no breach of duty as to the exercise of proper care.

Appellant concedes that the speed of the Bucho bus at the time of the initial collision may have been regarded as in excess of what was reasonable and proper but argues that the excessive part of the speed could not have been the proximate cause of the second collision because the crash would not have been avoided even though the bus driver had been proceeding at a proper rate of speed.

## POINT I

Substantial argument is directed at the alleged error of the court in giving Instruction No. 10 :[1]

"On February 3, 1961, the laws of Wyoming provided as follows:

" '31–108. Following too closely.—(a) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway.' "

In developing such thesis, appellant contends (a) from all the evidence in the case the Bucho bus was not acting in violation of the statute; (b) the duty of Bucho not to drive too closely to the vehicle in front of him in such a following situation was to guard against other kinds of accidents, not the risk or hazard of a vehicle approaching from the opposite direction swerving over into the wrong lane of the highway between his bus and the one in front of him; and (c) it was the proximity of the Bucho bus to the Buick and the truck immediately prior to the collision between the two latter vehicles, rather than its proximity to the Soltis bus, that must be regarded as the factual cause of the collision resulting in the damage here in issue.

 Much of the discussion on this subject is predicated upon the principle that the violation of a legislative enactment is irrelevant to an issue of negligence when the accident which occurred cannot be regarded as the kind that the measure was designed to guard against. In support of the principle, reference is made to the leading case of Gorris v. Scott, L.R. 9 Ex. 125 (1874), wherein the court held that there was no liability for loss of sheep washed overboard during a storm merely because of violation of a sanitary measure requiring separate pens. Other authorities are cited on the point, including some purported dicta in Kalman v. Western Union Telegraph Company, Wyo., 390 P.2d 724. For the purpose of discussion at this time, the principle contended for may be conceded since the determining factor in this aspect is not the propriety or validity of the rule but rather its applicability. Can we say that the legislature by the provisions of § 31–108(a) intended to guard against only certain risks and hazards? Some cases are cited where a court has taken such a view of certain laws, but none are analogous to the case before us, most of them dealing with matters where there would be no disagreement between reasonable men that the violation of the statute was wholly unrelated to the claimed injury. Appellant does call attention to 62A McKinney's Consolidated Laws of New York, Annotated, c. 71, Vehicle and Traffic Law, § 1129, p. 489 (1960), where the historical note, concerning a portion of a statute identical to § 31–108(a), states, "The rule is an important safeguard against rear-end collisions," and goes on to discuss another subsection somewhat similar to Wyoming's § 31–108

---

[1]. Instruction 10 of necessity must be read in conjunction with the other instructions of the case, including Instruction 11, "Violation of a state traffic law is evidence of negligence. If you determine that one or more of the defendants violated such a law on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not such defendant or defendants were negligent at the time of the occurrence. In addition to this determination it must also appear from competent evidence that such violation was a proximate cause of the accident."

(b), not in issue here. Under statutes of this latter type are cited Greathouse v. Mitchell, Ky., 249 S.W.2d 738, and Christman v. Weil, 196 Md. 207, 76 A.2d 144, in each of which cases the court indicated that subsection (b) was intended to facilitate passing and might be restricted accordingly. Whether or not our counterpart of this subsection would admit of such an interpretation need not here be discussed since it is not in issue. Suffice to say that we approve the following interpretation of a statute identical in all pertinent aspects to § 31–108(a):

"* * * said section was enacted for the protection of every person or vehicle which would reasonably be afforded a measure of protection by the enforcement of the terms thereof. Nothing contained in the section would indicate any intention to restrict its application. 'The purpose of statutes regulating and effecting automobile traffic on the highways is the promotion of the safety of the public.' Dinger v. Burnham, 360 Mo. 465, 228 S.W.2d 696, 699. * * *" Binion v. Armentrout, Mo., 333 S.W.2d 87, 90.

■ There is a further reason why we would be reluctant to circumscribe the trial court by preventing it from instructing as it did:

"* * * where the statute does set up standard precautions, although only for the protection of a different class of persons, or the prevention of a distinct risk, this may be a relevant fact, having proper bearing upon the conduct of a reasonable man under the circumstances, which the jury should be permitted to consider. * * *" Prosser, Law of Torts, p. 203 (3 ed.).

This leads us to a consideration of appellant's assertion that "It was the proximity of the following bus to the Buick car and the truck immediately prior to the collision rather than its proximity to the bus in front that must be regarded as the factual cause of the collisions that were to follow." We approach a consideration of this problem without the conviction which appellant's counsel seem to have that § 31–108(a) is directed only to the vehicle immediately in front of the driver. A more reasonable interpretation would be that the driver should not follow too closely any vehicle, including both the one immediately in front of him and the ones in front of that vehicle. In any event, decision on this facet is one dependent entirely upon facts which are substantially different from those in any case cited in support of the contention,[2] and cannot be disposed of as a matter of law but only by the finder of fact.

■ Under such circumstances, it was proper that the jury be instructed on the statute and be permitted to consider whether or not there had been compliance therewith as an aspect of the potential liability.

## POINT II

Appellant claims that the evidence was insufficient as a matter of law to justify a finding that any act of negligence on the part of Bucho was a proximate cause of the second collision, noting that plaintiffs alleged and attempted to develop several theories of negligence on his part, and summarizing these as follows: (1) unlawfully following another bus of Zanetti more closely than was reasonable and proper; (2) driving at an excessive rate of speed; (3) failure to maintain a proper lookout; and (4) failure to use reasonable precautions to avoid a collision with the truck after he saw or should have seen the first collision between the Buick and the truck.

As to (4), appellant maintains that since at the time of the first collision, Bucho was not more than two seconds away from a

2. Any similarity of Garland v. Wilcox, 220 Or. 325, 348 P.2d 1091, becomes unimportant here by reason of a negligence per se instruction in that case, as does Zanetti Bus Lines, Inc., v. Hurd, 10 Cir., 320 F.2d 123, where the matter in issue was § 31–108(b). Compliance or noncompliance with § 31–108(a) as warranting an instruction that its violation would be negligence per se is not in issue here.

crash, he was then in a hopeless dilemma inasmuch as the depth of the borrow pit prevented his getting off to the side of the road. Appellant notes appellees' emphasis at the trial of the fact that "after the emergency arose" Bucho hit the brakes hard rather than tapping them. Although we cannot accept the implication that the emergency existed only after the crash of the Buick and the P.I.E. truck, we would agree that hitting the bus brakes hard was not shown to be a proximate cause of the accident.

As to (3), appellant asserts a complete lack of direct evidence that Bucho was not keeping a proper lookout and that motion pictures, introduced in evidence simulating the accident, demonstrated conclusively that Bucho could not have seen the Buick fishtailing until it got into the wrong lane. The court has also viewed the pictures, and it is our conclusion that the jury would have been justified in not agreeing with appellant in such an interpretation.

As to (2), appellant concedes sufficient evidence concerning the time of the initial collision to justify a finding that the bus driver was proceeding at a rate of 53 miles per hour, but insists that the speed was not a proximate cause of the second collision since even at a clearly proper rate of about 30 miles per hour it could not have been avoided. Appellant argues that the speed at which Bucho was traveling before he knew or should have known of a condition or hazard in front of him calling for action is immaterial except insofar as that part of the speed which was excessive rendered him unable to stop when, had he been traveling at a proper rate of speed, he could have stopped, citing O'Mally v. Eagan, 43 Wyo. 233, 2 P.2d 1063, 77 A.L.R. 582, and Checker Yellow Cab Co. v. Shiflett, Wyo., 351 P.2d 660. Appellant claims that there would have been no more than four seconds from the time of the initial collision, and five seconds from the time the Buick got into the wrong lane, for Bucho to avoid the second collision, even if he had been proceeding at a proper rate of speed, and

that after Bucho is given two seconds to decide what should be done and then doing it, it is quite obvious that nothing could have been done. It must be noted that appellant's contention rests on its premise that Bucho did not know and could not have known of a condition or hazard in front of him calling for action until the occurrence of the first collision, or just prior thereto, when the Buick was in the wrong lane. It ignores the probability of a man in the exercise of proper care viewing the extremely icy condition of the road and the fishtailing of the Weimer automobile in Bucho's lane of traffic as a hazard to which a reasonable man would have responded with a reduction of speed, thereby leaving him in control' of the situation at the time of the final crisis. Appellant's argument is thus without convincing force.

As to (1), appellant indicates that under the argument espoused in Point I it has demonstrated that the proximity of the following bus to the front bus was legally irrelevant. Of course, we have already indicated our position to the contrary. The evidence adduced before the jury disclosed more than the initial crash and the truck's subsequent crossing over into Bucho's lane of traffic at a distance of about ninety feet. It showed a string of traffic over a considerable distance on a very icy stretch of highway, the most hazardous yet encountered. From this a reasonable man might well have been cognizant of the probability of a vehicle proceeding in his own string of traffic skidding into the other lane and at the least causing a stop in the flow of traffic. The evidence presented to the jury showed that one of the vehicles ahead of Bucho, the Buick, did indeed fishtail three or four times, swaying four or five feet, the first occurring two or three hundred feet before the one which resulted in the collision with the P.I.E. truck. Under such circumstances we cannot say that as a matter of law the Bucho bus was not following "another vehicle more closely than is reasonable and prudent, having due regard for the * * * traffic upon and the

condition of the highway." § 31–108(a). Neither can we say that the violation of the statute was not a proximate cause of the accident. As we have before indicated, this was not merely a matter of the P.I.E. truck skidding over into Bucho's lane of traffic at a distance so close that Bucho was helpless. It was a matter of one of the vehicles in Bucho's lane of traffic going over into the lane of traffic in which the P.I.E. truck was traveling, the following initial collision, and the resulting headlong surge of the truck into the final crash.

■ From the evidence, the jury was entitled to believe that if Bucho had had "due regard for the * * * traffic upon and the condition of the highway" and had followed the vehicles in his lane of traffic at a reasonable and prudent distance he could have avoided the second collision. As has been indicated under our discussion of Point I, these circumstances fairly presented question as to Bucho's negligence which only the jury could properly answer.

### POINT III

Appellant insists that the court's refusal to give the following instructions was error:

"Instruction No. A. You are instructed that the speed of the Bucho bus cannot be said to have been the proximate cause of the collision with the PIE truck, if the collision would have occurred regardless of the speed at which the Bucho bus was traveling."

"Instruction No. C. If you find that John Bucho was maintaining a proper lookout, and that regardless of the speed he was traveling the collision with the P.I.E. truck would still have occurred then your verdict should be in favor of defendant Zanetti Bus Lines, Inc."

■ Appellees argue that the objections made at the time the court refused to give these instructions were inadequate because they were "mass" or general, urging that a party complaining as to the rejection of instructions must point out with definite-

ness and particularity the error complained of so that the trial court may pass upon the exact question which may thereafter be presented on review, citing McFetridge v. State, 32 Wyo. 185, 231 P. 405, 234 P. 505. The record indicates that the objections to the refusal of the instructions were sufficient to inform the trial court of Zanetti's position. However, we think that the court was justified in rejecting the instructions since the matters with which they dealt were adequately covered by other instructions. The court had defined proximate cause and had advised in substance that liability could be imposed only when the preponderance of the evidence convinced that the person charged was guilty of negligent conduct, which was the proximate cause of the accident. It is well settled that a party is not prejudiced by refusal of instructions when the matter is covered by ones which are given. Brown v. Wyoming Butane Gas Co., 66 Wyo. 67, 205 P.2d 116; Edwards v. Murray, 5 Wyo. 153, 38 P. 681. Finding no error on this basis, we consider it unnecessary to discuss appellees' argument that under principles enunciated in Oeland v. Neuman Transit Company, Wyo., 365 P.2d 806, 811, and 88 C.J.S. Trial § 336, p. 877, n. 9, p. 878, appellant's instructions were argumentative and tended to unduly stress the importance of certain factors.

### POINT IV

■ Zanetti filed a motion for mistrial on the ground that one of the bailiffs at the jury's request supplied it with a dictionary. The court overruled the motion and appellant contends this to be prejudicial error, relying upon Rocky Mountain Trucking Company v. Taylor, 79 Wyo. 461, 335 P.2d 448, as holding that the procuring of a dictionary by the bailiff and permitting the jury to use it was improper and subject to censure. Appellees on the other hand rely upon the same case for the fact that such an incident was not of itself to be considered sufficient reason to set aside a verdict sustained by the evidence. Appellant is free to admit that to justify a

reversal it must reasonably appear on the hearing for the motion for new trial and from the record as a whole that injury probably resulted to the complaining party, Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462. Counsel argue that the jury's being furnished a dictionary upon a request to find the meaning of the word "natural" together with the absence of ample evidence to justify the result reached by the jury is cause for reversible error. They say that there must be some situations where the unsound practice of allowing a book to be given the jury would be reversible error but such would not be true if the mere fact that the evidence could conceivably be regarded as sufficient should in all cases warrant refusal to grant a mistrial. Here they insist that there was not sufficient evidence of proximate cause upon which the verdict could be based; there is reason to believe that the jury probably for this reason was concerned with the definition of the word "natural"; and because various Wyoming cases [3] tend to preclude any interrogation of the conduct of the jury, it would be impossible to ascertain the extent which the misconduct affected the thinking of the jury. These are presented as cogent reasons why the motion should have been granted. We are not persuaded that the court committed prejudicial error in overruling the motion. Eight meanings of "natural" were given in the dictionary provided to the jury, and of these, only one, number four, could reasonably be applied to a situation such as the one at bar, "Of or in keeping with nature, or the objects or operations of the physical world; as, natural phenomena; natural causes." This is not substantially different from a legal definition and had the court considered it proper to instruct, the meaning of the word might have been given as "arising under the ordinary operation of physical laws; produced in the course of nature; resulting in the ordinary

course of things." Strong v. Aetna Casualty & Surety Co., Tex.Civ.App., 170 S.W.2d 786. As we have already indicated, there was sufficient substantial evidence both of negligence and of proximate cause upon which the jury could have based its verdict.

We find no reversible error in the record, and the judgments entered by the trial court in the various cases should be affirmed.

Affirmed.

GRAY, J., not participating.

---

3. York v. North Central Gas Co., 69 Wyo. 98, 237 P.2d 845; Morris v. State, 39 Wyo. 157, 270 P. 415; Pullman Co. v.

Finley, 20 Wyo. 456, 125 P. 380; Bunce v. McMahon, 6 Wyo. 24, 42 P. 23.