Judy KINNISON, Administratrix of the Estate of Charles D. Kinnison, Deceased, and Administratrix of the Estate of James F. Kinnison, Deceased, and Judy Kinnison, Individually, Plaintiffs-Appellees,

v.

Robert E. HOUGHTON, Dale Manning and Nolte Bros. Truck Line, Inc., of Denver, Colorado, Jointly and Severally, Defendants-Appellants.

No. 188–69.

United States Court of Appeals, Tenth Circuit.

Oct. 30, 1970.

---

Vincent A. Ross, Cheyenne, Wyo., for plaintiffs-appellees.

A. Joseph Williams, Cheyenne, Wyo. (Guy, Williams, White & Mulvaney, Cheyenne, Wyo., on the brief) for defendants-appellants.

Before LEWIS, Chief Judge, and HILL and HOLLOWAY, Circuit Judges.

HOLLOWAY, Circuit Judge.

Appellee Judy Kinnison sued in the District of Wyoming for the wrongful deaths of her husband and infant son and for personal injuries to herself sustained in a collision between a tractor and semi-trailer rig and the pickup in which the Kinnisons were traveling. The defendants were appellant Houghton, driver of the rig; appellant Manning, owner of the rig; and appellant Nolte Brothers' Truck Line, Inc., lessee of the rig. Manning counterclaimed for damages to his rig. It is conceded that if Houghton was guilty of negligence proximately causing the accident, then all of the defendants are liable.

The jury found for the defendants on the claim for Mr. Kinnison's death, thus implicitly finding him guilty of contributory negligence barring such recovery. It found for Mrs. Kinnison in the amount of $15,000 on her claim for wrongful death of the infant, and for her personally in the amount of $9,331.95 for her injuries. The verdict for the infant's death was reduced by remittitur to $7,500. No recovery was awarded on the counterclaim for the damages to the rig and it is not at issue here. From the judgments on the verdicts, the defendants appeal.

The facts relating to the accident are relatively simple. The collision occurred on Highway 30 at a point a few miles east of Cheyenne. At the point of collision the highway is two lane. It is 26 feet wide, divided by a white dashed line, with a 9 foot paved shoulder on the south side and a 6 foot paved shoulder on the north side. A solid yellow line is in the north, or westbound lane, beginning 540 feet east of the scene of the accident, and continuing 725 feet west of the scene of the accident, at which point the road becomes a four lane highway. The yellow line indicates a no-passing zone for traffic moving in a westward direction. There were no sight obstructions to westbound traffic approaching the four lane section of highway.

Mr. Kinnison was driving the pickup, in which Mrs. Kinnison and the child were passengers, in a westerly direction on the two lane road. He had gotten on the highway to travel west about a quar-

ter of a mile and then to turn off to the Ocheskey residence where Mrs. Kinnison's parents lived. He slowed down to turn left or southward, into the private driveway leading to the Ocheskey residence. The rig driven by Houghton was following the pickup in the same westerly direction, and the Kinnisons had seen the semi-trailer before getting on the highway.

There was testimony by a passenger in a car following two or three vehicles behind Houghton that they were coming down a hill and that the semi driven by Houghton was in the left or passing lane for about 400 feet before the impact (which conflicted with other testimony that the semi-trailer pulled all the way into the eastbound lane when the pickup turned); that the Kinnison pickup was in the right lane; that the pickup slowed down and the semi-trailer rig was catching up with the pickup; and that the pickup then turned left. Houghton said the pickup pulled to the extreme right side of the road and slowed down; that he then pulled his rig to the left to pass; and that the pickup then made a sharp left turn before the collision.

The testimony of various witnesses was in conflict as to whether the Kinnison pickup pulled to the right before turning left. In any event the pickup did turn left and the pickup and semi-trailer rig collided. There was no contradiction to the testimony of several witnesses that they did not see Kinnison signal before turning, and his pickup had no turn indicators. There was testimony that Houghton saw Kinnison's brake lights go on and that Houghton gave no audible signal that he was passing.

Thus, it is admitted that Houghton was passing the pickup in a no-passing zone marked by the yellow line, and the issues on this appeal focus on that fact. However, the case was not submitted to the jury on this allegation of negligence alone. Among other things, the charge included reference to claims of negligence for not maintaining a proper lookout and to the statute on giving passing warnings by horn signals. Therefore, several allegations of negligence were before the jury for consideration in arriving at its general verdicts involved on this appeal.

In connection with the no-passing zone issue, the Court permitted the Wyoming highway patrolman to testify that Houghton was passing in a no-passing zone. The jury was instructed that the superintendent of the State Highway Department was authorized to designate those portions of the highway where passing or driving to the left of the roadway would be hazardous and to mark such areas by appropriate signs. In so doing the trial court implicitly held that the statute on no-passing zones and the proof thereon were relevant for consideration. He instructed the jury that violation of a State statute is a circumstance which the jury could consider with all other circumstances in deciding whether Houghton was negligent.

Defendants urge three closely related objections to the testimony and instructions. First, they contend that the accident was not the type of hazard that the statute [1] and the no-passing zone were designed to prevent. Secondly, they assert that even if the violation of the statute constituted negligence, it was not the proximate cause of the collision. And, thirdly, they urge that the trial court erred in failing to instruct the jury to disregard the existence of the yellow line and in giving an incomplete instruc-

1. Section 31–105, Wyoming Statutes Annotated, 1957, provides:

"§ 31–105. *No-passing zones.*—The superintendent is hereby authorized to determine those portions of any highway where overtaking and passing or driving to the left of the roadway would be especially hazardous and may by appropriate signs or markings on the roadway indicate the beginning and end of such zones and when such signs or markings are in place and clearly visible to an ordinarily observant person every driver of a vehicle shall obey the directions thereof. (Laws 1955, ch. 225, § 49.)"

tion with regard to the yellow line. In support of these contentions the defendants stress the testimony of the highway patrolman and the state traffic engineer that the purpose of the no-passing zone was to properly funnel traffic from the two lane highway into the four lane highway to the west and that the no-passing restriction was not related to the private turnoff into the Ocheskey residence.

Since this is a diversity suit we start with the proposition that the District Court's view of Wyoming law will not be disturbed unless clearly erroneous. Manville v. Borg-Warner Corporation, 418 F.2d 434 (10th Cir.); Parsons v. Amerada Hess Corporation, 422 F.2d 610 (10th Cir.). And we feel that the trial court's view that the Kinnisons were within those afforded some protection by the statute and the no-passing rule was not clearly erroneous. That view was implicit in the admission of testimony and in the instructions given, and we agree that it was a proper application of Wyoming law to these facts. We believe that the decision of the Wyoming Supreme Court in Zanetti Bus Lines, Inc. v. Logan, 400 P.2d 482, supports this conclusion.

In the *Zanetti* case the Wyoming Court held that the plaintiffs might rely on violation of a statute as evidence of negligence where the plaintiffs would reasonably be afforded a measure of protection by the enforcement of the terms thereof. Id. at 485.[2] This principle was applied in holding that violation of the statute on following too closely might premise recovery in a negligence action, although the vehicle following too closely was only involved in a second collision subsequent to an accident caused by other negligence. However, the principle

is broad and although this no-passing zone was obviously related to funneling traffic into the four lane highway, we cannot say that Houghton's observance of the no-passing rule would not have afforded a measure of protection to the Kinnison vehicle. As the Wyoming Court stated: "Neither can we say that the violation of the statute was not a proximate cause of the accident." Id. at 487. Instead the proximate cause issue was within the questions of fact for the jury to decide, and its verdict against appellants is not without support.

■ We are not unmindful of our decision in Zanetti Bus Lines, Inc. v. Hurd, 320 F.2d 123 (10th Cir.), on which appellants rely. There we did hold that an instruction on one portion of the following too closely statute was erroneous because the statutory violation was not a proximate cause of the accident. Nevertheless, the Wyoming Supreme Court later in its *Zanetti* case—arising out of that same accident—held that submitting the instruction on the following too closely statute was not error, and that the issue of proximate cause was properly submitted to the jury as a fact question as to whether the statutory violation was a proximate cause of the accident. Regardless of whether the decisions may be harmonized, in this diversity suit the Federal courts must follow the principles of the intervening State decision. Huddleston v. Dwyer, 322 U.S. 232, 64 S.Ct. 1015, 88 L.Ed. 1246. And with the Wyoming *Zanetti* decision before us, we cannot say that the trial court's rulings and instructions were clearly erroneous in applying the State law.

■ The defendants urge that even if the trial court properly instructed on the designation of no-passing zones, in any event the charge was incomplete

---

2. We note that the Wyoming Court also stated:

"There is a further reason why we would be reluctant to circumscribe the trial court by preventing it from instructing as it did:

'* * * where the statute does set up standard precautions, although only for the protection of a different class

of persons, or the prevention of a distinct risk, this may be a relevant fact, having proper bearing upon the conduct of a reasonable man under the circumstances, which the jury should be permitted to consider. * * *' Prosser, Law of Torts, p. 203 (3 ed.)." (400 P. 2d 482, 485.)

since it did not refer to a state traffic manual discussing the circumstances when no-passing zones are established. Counsel argued that in the absence of such information the jury was left free to speculate on the legal effect of a yellow line and that the manual did not include circumstances such as are involved here in the hazards dealt with by no-passing zones.

We disagree. Even if the manual is assumed to be controlling as to hazards protected against, it contained a general reference to "other hazardous conditions," and as stated, we accept the trial court's view that the plaintiffs would reasonably be afforded a measure of protection by enforcement of the no-passing rule. We believe that the charge was adequate in discussing the various grounds of negligence. In so doing the Court properly left the determination to the jury whether the no-passing zone violation, considered with all the surrounding circumstances, constituted negligence that was a proximate cause of the accident.

Affirmed.