UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

BLACKHAWK–CENTRAL
CITY SANITATION DISTRICT,
a quasi-municipal Colorado
corporation,

       Plaintiff-Appellant,

v.                                                          No. 98-1075

AMERICAN GUARANTEE
AND LIABILITY INSURANCE
COMPANY, a New York corporation,

       Defendant,

   and

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,
a Minnesota corporation,

       Defendant-Appellee.

THE INSURANCE
ENVIRONMENTAL
LITIGATION ASSOCIATION,

       Amicus Curiae.

ORDER
Filed May 31, 2000

Before **BALDOCK** , **EBEL** , and **MURPHY** , Circuit Judges.

This matter is before the court on petition of Defendant-Appellee, St. Paul Fire and Marine Insurance Company, seeking rehearing of this court's opinion filed April 11, 2000. The members of the hearing panel have determined that it is appropriate to clarify and substitute the opinion's discussion in Part III.D of an aspect of Appellee's argument on appeal. The members of the hearing panel have also considered Appellee's arguments on the merits of this court's disposition of this appeal, and conclude that the court's original disposition was correct. Therefore, the petition for rehearing is GRANTED in part to clarify and substitute a portion of the opinion at Part III.D, and is DENIED in all other respects. We withdraw the opinion filed on April 11, 2000, vacate the judgment, and substitute the modified opinion attached to this order.

Entered for the Court,
PATRICK FISHER, Clerk of Court

By:
Keith Nelson
Deputy Clerk

-2-

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 31 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BLACKHAWK–CENTRAL
CITY SANITATION DISTRICT,
a quasi-municipal Colorado
corporation,

        Plaintiff-Appellant,

v.

AMERICAN GUARANTEE
AND LIABILITY INSURANCE
COMPANY, a New York corporation,

        Defendant,

    and

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,
a Minnesota corporation,

        Defendant-Appellee.

---

THE INSURANCE
ENVIRONMENTAL
LITIGATION ASSOCIATION,

        Amicus Curiae.

No. 98-1075

Submitted on the briefs:

Timothy J. Flanagan and Katherine Taylor Eubank, of Fowler, Schimberg & Flanagan, P.C., Denver, Colorado, for Plaintiff-Appellant.

Richard B. Caschette, John R. Mann and Kevin P. Perez, of Kennedy & Christopher, P.C., Denver, Colorado, for Defendant-Appellee.

Laura A. Foggan, Daniel E. Troy and Raymond Shepherd, III, of Wiley, Rein & Fielding, Washington, D.C., filed an amicus curiae brief for the Insurance Environmental Litigation Association.

Before **BALDOCK** , **EBEL** , and **MURPHY** , Circuit Judges.

**MURPHY** , Circuit Judge.

Plaintiff, Blackhawk-Central City Sanitation District (District), brought a declaratory action and sought damages for breach of insurance contract against St. Paul Fire and Marine Insurance Company (St. Paul) alleging St. Paul had a duty to defend and indemnify the District against environmental damage claims. The action was originally filed in Colorado state court but, on St. Paul's motion, was removed to federal court pursuant to diversity of citizenship jurisdiction under 28 U.S.C. § 1332. The District moved for partial summary judgment

against St. Paul on the duty to defend claim, which the district court denied.

The district court held that the pollution exclusion provisions in the St. Paul

insurance policies excluded coverage for the claims made against the District in

the *Old Timer* complaint. [1]  Exercising jurisdiction pursuant to 28 U.S.C. § 1291,

we reverse. [2]

## I.  BACKGROUND

### A.  The *Old Timer* Complaint

The District owns and operates a sewage treatment facility on North Clear

Creek in Blackhawk, Colorado.  The facility treats sanitary sewer waste from

communities of Blackhawk and Central City and, pursuant to a permit issued

by the Colorado Department of Health, Water Control Division, discharges

effluent into North Clear Creek.  In 1993, owners of property downstream from

the treatment facility sued the District, alleging that the District repeatedly

discharged improperly treated sewage effluent into North Clear Creek in violation

---

[1]    The District also brought a declaratory judgment and breach of insurance
contract claim against American Guarantee & Liability Insurance Company
(American).  That action was consolidated with the St. Paul action.  As of the
date the District filed its notice of appeal, the claims against American had not
been finally disposed of in the district court; however, the district court granted
certification on the claims against St. Paul pursuant to Fed. R. Civ. P. 54(b).

[2]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination
of this appeal.   *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.

of its permit. *See The Old Timer, Inc. et al. v. Blackhawk-Central City Sanitation District* , D. Colo. No. 93-B-249 complaint, Appellant's App. at 61-73 (the *Old Timer* litigation). The *Old Timer* complaint lists a series of specific dates, beginning in 1985 and continuing through the date of the complaint, on which it alleges testing revealed effluent containing waste matter in excess of permitted levels. The complaint alleges that the substances contained in the District's effluent, alleged to include suspended solids, fecal coliform bacteria, ammonia, and residual chlorine in excess of its permit limits, constitute "pollutants" within the meaning of the Clean Water Act, 33 U.S.C. § 1362(6). The complaint alleges that the District's conduct in violating and disregarding the permit limitations was knowing, willful and negligent.

## B. The Insurance Policies

During a portion of the time frame at issue in the *Old Timer* litigation, the District was insured by two comprehensive general liability (CGL) insurance policies issued by St. Paul. The first policy, No. 583ZA3251 (Policy ZA) was effective from February 18, 1983 to February 18, 1986. The second policy, No. CK08300195 (Policy CK), was effective from February 18, 1986 to February 18, 1987. Both policies cover claims for property damage resulting from an "accidental event." Appellant's App. at 80, 108. An "accidental event" is defined to mean "any event that results in bodily injury or property damage

-4-

that the protected person didn't expect or intend to happen." *Id*. Both policies obligate St. Paul to defend any suit brought against the District for covered claims, even if the suit is groundless or frivolous.

Both policies contain a standard clause known as a "pollution exclusion clause," which states St. Paul will not "cover injury or damage caused by the discharge, dispersal, release or escape of pollutants such as . . . acids, alkalis, toxic chemicals, liquids or gases; or waste material or other irritants or contaminants." *Id*. at 83, 111. However, Policy ZA states that "this exclusion won't apply to sudden accidents involving pollutants." *Id*. at 83. In other words, Policy ZA generally excludes any coverage for pollution discharges, but restores coverage for "sudden accidents involving pollutants." *Id*.

Policy CK contains a pollution exclusion clause identical to the one in Policy ZA, but also contains a Pollution Exclusion Endorsement (the Endorsement) which states it "replaces the [p]ollution exclusion" clause in the policy to exclude coverage. *Id*. at 121. The Endorsement omits the language in the pollution exclusion clause that restores coverage for "sudden accidents involving pollutants." *Compare id*. at 111 *with id*. at 121. The Endorsement is known as an "absolute pollution exclusion."

## C. The Proceedings Below

In July 1994, the district court denied the District's motion for partial summary judgment, ruling that the pollution exclusion provisions in Policy ZA and CK barred coverage for the *Old Timer* litigation. *See Blackhawk-Central City Sanitation Dist. v. American Guar. & Liab. Ins. Co.*, 856 F. Supp. 584, 591 (D. Colo. 1994). The district court concluded that the pollution exclusion in Policy CK, as replaced by the Endorsement, was absolute and precluded coverage for all of the claims in the *Old Timer* litigation. The district court concluded that the pollution exclusion provision in Policy ZA also barred coverage because the release of effluent as alleged in the *Old Timer* litigation was not an "accident." Thus, the district court held that St. Paul had no duty to defend the District in the *Old Timer* litigation. *Id.*

St. Paul then filed a motion for costs and entry of judgment pursuant to Fed. R. Civ. P. 58. When the District filed a response arguing that St. Paul had not filed a motion for summary judgment, St. Paul moved for summary judgment in its reply. The district court granted St. Paul's motions for summary judgment and for entry of judgment on January 29, 1998, and certified that judgment as final under Rule 54(b) on April 14, 1998.

## II. STANDARD OF REVIEW

The District appeals the district court's grant of summary judgment in favor of St. Paul. We review the district court's grant of summary judgment *de novo*, applying the same legal standards used by that court. *See Charter Canyon Treatment Ctr. v. Pool Co.*, 153 F.3d 1132, 1135 (10th Cir. 1998). Summary judgment should not be granted unless the evidence, viewed in the light most favorable to the party opposing the motion, shows there are no genuine issues of material fact and the moving party is due judgment as a matter of law. *See id*.; Fed. R. Civ. P. 56(c). Furthermore, the proper interpretation and construction of an insurance policy is a matter of law, and therefore we review the policies at issue *de novo* in order to determine whether they gave rise to a duty to defend. *See I.D.G., Inc. v. St. Paul Fire & Marine Ins. Co.*, No. 99-5067, 2000 WL 135171, at **3 (10th Cir. Feb. 7, 2000).

When, as here, a federal court is exercising diversity jurisdiction, it must apply the substantive law of the forum state. *See Blanke v. Alexander*, 152 F.3d 1224, 1228 (10th Cir. 1998). The parties agree that Colorado law governs our interpretation of these policies; thus, we apply the most recent statement of Colorado law by the Colorado Supreme Court. *See Wood v. Eli Lilly & Co.*, 38 F.3d 510, 513 (10th Cir. 1994). When the Colorado Supreme Court has not yet addressed an issue, we seek to predict how that court would decide the

question. *See Farmers Alliance Mut. Ins. Co. v. Bakke*, 619 F.2d 885, 888 (10th Cir. 1980). We review the district court's determination of Colorado law *de novo*. *See Salve Regina College v. Russell*, 499 U.S. 225, 231 (1991).

We ordered this appeal abated pending decisions by the Colorado Supreme Court in *City of Englewood v. Commercial Union Assurance Cos.*, 940 P.2d 948 (Colo. Ct. App. 1996), *cert. granted sub nom. Compass Ins. Co. v. City of Littleton*, No. 96SC852 (Colo. July 28, 1997) and *Public Service Co. v. Wallis & Cos.*, 955 P.2d 564 (Colo. Ct. App. 1997), *cert. granted*, No. 97SC792 (Colo. May 26, 1998). The Colorado Supreme Court has now handed down decisions in both of these cases. *See Compass Ins. Co. v. City of Littleton*, 984 P.2d 606 (Colo. 1999) and *Public Service Co. v. Wallis & Cos.*, 986 P.2d 924 (Colo. 1999). Because both decisions address certain of the issues raised here, we analyze the District's claims in light of these recent cases.

## III. DISCUSSION

### A. The Duty to Defend

Under Colorado law, an insurance carrier's duty to defend under a liability insurance policy arises whenever a complaint alleges any facts that arguably fall under the coverage of the policy. *See Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991). An insurer's "duty to defend is broader than the duty to indemnify . . . [and] in some instances, insurers will be found to

-8-

have a duty to defend even though ultimately it may be determined that they have no duty to indemnify." *Compass*, 984 P.2d at 613 (quotation omitted).

Colorado "has set a high standard for an insurance company seeking to avoid its duty to defend," by which "the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove that it cannot." *Id.* at 614 (quotation omitted).

> An insurer seeking to avoid its duty to defend an insured bears a heavy burden. An insurer's duty to defend arises when the underlying complaint against the insurer alleges any facts that might fall within the coverage of the policy. The actual liability of the insured to the claimant is not the criterion which places upon the insurance company the obligation to defend. Rather, the obligation to defend arises from allegations in the complaint, which if sustained, would impose a liability covered by the policy. Where the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim.

*Id.* at 613-14 (quoting *Hecla*, 811 P.2d at 1089) (further quotations omitted).

This same heavy burden applies when an insurer claims its duty to defend does not exist because of the policy's exclusions:

> In order to avoid policy coverage, an insurer must establish that the exemption claimed applies in the particular case, and that the exclusions are not subject to any other reasonable interpretation. The insurer has a duty to defend unless the insurer can establish that the allegations in the complaint are solely and entirely within the exclusions in the insurance policy. An insurer is not excused from its duty to defend unless there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured.

*Id*. at 614 (quoting *Hecla*, 811 P.2d at 1090). Further, under Colorado law, if the underlying complaint asserts more than one claim, a duty to defend against all claims asserted arises if any one of them is arguably a risk covered by the pertinent policy. *See Fire Ins. Exch. v. Bentley*, 953 P.2d 1297, 1300 (Colo. Ct. App. 1998).

### B. Whether the Effluent is a Pollutant

The District first argues that the district court erred in finding that the District's effluent constitutes a "pollutant" within the scope of the pollution exclusion provisions in the insurance policies. The policies define "pollutants" broadly to include "toxic chemicals, liquids or gases; or waste material or other irritants or contaminants." Appellant's App. at 83, 111. The District argues that an ambiguity exists about whether sewage sludge from a sewage treatment facility should be considered a "pollutant." The District relies on two federal district court decisions from Colorado and a Colorado Court of Appeals decision, *City of Englewood v. Commercial Union Assurance Cos.*, 940 P.2d 948, *rev'd in part by Compass*, 984 P.2d 606, which recognized a distinction between toxic industrial sludge, and non-toxic, non-hazardous "biosolids" or domestic sewage sludge, because of the beneficial reuse of sewage sludge in agriculture. *See id*. at 955. *City of Englewood* held that genuine issues existed as to the legal and factual characterization of domestic municipal sewage sludge. *See id*. The

District argues that in cases where sewage sludge is the alleged pollutant, there is a mixed question of law and fact as to whether the sewage sludge constitutes a "pollutant." [3]

However, the portion of the Colorado Court of Appeals decision upon which the District's argument is based was recently overruled by the Colorado Supreme Court. In *Compass Ins. Co. v. City of Littleton*, the Colorado Supreme Court held that the Colorado Court of Appeals erred in *City of Englewood* in considering whether genuine issues existed as to the legal and factual characterization of sewage sludge with respect to whether it constituted a "pollutant." *See* 984 P.2d at 615. *Compass* held that, in resolving duty-to-defend claims, courts may only look at the allegations of the underlying complaint against the insured, and cannot look to any extrinsic evidence, including evidence that sewage effluent may not be a pollutant, in analyzing pollution exclusion provisions. *See id.* at 615-16. Under Colorado law, the only relevant inquiry is how the complaint characterized the materials and whether that characterization fits within the terms of the policy. *See id.*

---

[3] St. Paul argues that the District did not raise this issue before the district court. We are satisfied from our review of excerpts from the District's motion for summary judgment and its motion to alter or amend the district court's June 24, 1994 order, that this issue was adequately presented below, particularly because the district court addressed this issue in its ruling, *see Blackhawk*, 856 F. Supp. at 589.

Thus, the relevant inquiry in this case is how the *Old Timer* complaint characterized the alleged discharges. The *Old Timer* complaint makes the factual allegation that the District discharged "Suspended Solids, Fecal Coliform Bacteria, Ammonia, Residual Chlorine, and other chemicals and substances in amounts in excess of levels permitted by law," and that it discharged "raw sewage and other pollutants." Appellant's App. at 64, 69. Clearly, these materials constitute "waste material" and "contaminants" within the policies' broad definition of "pollutants." *See Compass*, 984 P.2d at 615-16 and 615 n.7. It would, therefore, have been improper for the district court to have looked beyond the face of the complaint, as urged by the District, in order to have considered any extrinsic evidence offered by the District in its attempt to change the characterization of the discharge. *See id.* at 615-16. The complaint also makes the legal allegation that the discharges constitute "pollutants," and that the plaintiffs suffered damage from "pollutants" discharged by the District that entered and remained on their land. *See* Appellant's App. at 64, 69, 70. Finally, the environmental statutes that the *Old Timer* complaint alleges the District violated and under which the complaint seeks damages, define "pollutants" to include sewage and sewage sludge. *See* 33 U.S.C. § 1362(6); Colo. Rev. Stat. § 25-8-103(15) (1990). Accordingly, we conclude the district court did not err in finding that the sewage and effluent the District is alleged to have discharged

constitute "pollutants" within the meaning of St. Paul's insurance policies' exclusions.

## C. The CK Policy Endorsement

The District next contends the district court erred in holding that the absolute pollution exclusion contained in the Endorsement to Policy CK overrides that policy's standard pollution exclusion clause. Whereas the body of Policy CK contains an exception to its general pollution exclusion for "sudden accidents involving pollutants," the absolute pollution exclusion clause in the Endorsement contains no such exception restoring coverage. *See* Appellant's App. at 111, 121.

"The general rule provides that when a conflict in an insurance contract arises between provisions contained in the body of the policy and provisions contained in an endorsement to that policy, the endorsement provisions prevail." *Simon v. Shelter Gen. Ins. Co.*, 842 P.2d 236, 241 (Colo. 1992). *Simon* recognized an exception to that general rule, however, holding that conflicting provisions should be construed against the insurer in cases where the endorsement contains no separate signatures, and there is no other evidence or allegation that the endorsement had been separately negotiated. *See id.* at 241-47. The District contends the *Simon* conditions exist here and that the absolute pollution exclusion provision in the Endorsement conflicts with the pollution exclusion clause in the body of the policy.

-13-

We agree with the district court's conclusion that *Simon* does not apply to this case because the Endorsement does not conflict with the policy. Unlike the endorsement at issue in *Simon*, the Endorsement to Policy CK expressly states that it "*replaces* the [p]ollution exclusion" within the body of the policy. Appellant's App. at 121 (emphasis added). In addition to this clear and unambiguous explanation that the Endorsement is a replacement of the pollution exclusion clause, the introduction page to Policy CK clearly states that the policy may "include one or more endorsements," and explains that "[e]ndorsements are documents that change [the District's] policy." *Id.* at 100. Because the Endorsement reconciled its absolute pollution exclusion provision with the body of Policy CK by making clear it was a replacement to the pollution exclusion provision in the policy, there is no inherent conflict, as there was in *Simon*. Thus, the district court correctly concluded that St. Paul does not have a duty to defend the District under Policy CK.

### D. The Pollution Exclusion Clause in Policy ZA

The District next contends that the district court failed to find, pursuant to *Hecla*, that the phrase "sudden accident" in Policy ZA's pollution exclusion provisions is ambiguous. We agree with the District that the district court erroneously applied Colorado law, and that the phrase "sudden accident"

-14-

is ambiguous under Colorado law and should, therefore, be construed in favor of the District.

Under Colorado law, "[t]erms used in a contract are ambiguous when they are susceptible to more than one reasonable interpretation." *Hecla*, 811 P.2d at 1091. Colorado law holds that ambiguous language in an insurance contract "must be construed in favor of the insured and against the insurer who drafted the policy." *Id.* at 1090. Further, under Colorado law, when there are two or more reasonable interpretations of an insurance provision, courts must adopt an interpretation that provides coverage. *See Chacon v. American Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990). It follows from these principles that an insurer seeking to avoid coverage based on the contention that a policy exclusion applies, must prove "that the exemption claimed applies in the particular case, and that the exclusions are not subject to any other reasonable interpretation." *Compass*, 984 P.2d at 614 (quoting *Hecla*, 811 P.2d at 1090).

Policy ZA states that St. Paul "won't cover injury or damage caused by the discharge, dispersal, release or escape of pollutants . . . , [b]ut this exclusion won't apply to sudden accidents involving pollutants." Appellant's App. at 83. Policy ZA does not define "sudden accidents." An almost identical exception to a pollution exclusion clause was held to be ambiguous by the Colorado Supreme Court in *Hecla*. There, the relevant provision stated that coverage was restored if

-15-

the discharge of the pollutant was "sudden and accidental." 811 P.2d at 1087. The court in *Hecla* concluded the phrase "sudden and accidental" could reasonably be defined to mean abrupt or immediate, or it could reasonably be defined to mean unexpected and unintended. *Id*. at 1092. *Hecla* construed the phrase against the insurer to mean unexpected and unintended, thus triggering the insurer's duty to defend. *Id*. at 1092.

The District argues Policy ZA's pollution exclusion clause suffers from the same ambiguity as the one in *Hecla* and should be construed against St. Paul to apply to all unexpected and unintended pollution events. It contends that St. Paul has a duty to defend because the discharges alleged in the *Old Timer* complaint were arguably unexpected and unintended. *See id*. at 1090 ("An insurer is not excused from its duty to defend unless there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured."). St. Paul counters that *Hecla* is distinguishable, and therefore not applicable here. St. Paul argues that *Hecla*'s conclusion that "sudden" is capable of more than one reasonable interpretation was based on unique policy language in that case. In *Hecla*, the court noted that there would be an inherent contradiction with specific policy language if "sudden" was given a temporal connotation, that is, only meant "abrupt." *See id*. at 1092. St. Paul contends that there would be no such inherent

contradiction within its policies; therefore, "sudden" only has a temporal connotation, meaning "abrupt and immediate," in this case.

The district court ignored both these arguments, holding that, "[r]egardless of which party's definition of 'sudden' is applied in this case, the Old Timer complaint makes clear that the District's release of pollutants was no accident." *Blackhawk*, 856 F. Supp. at 591. The district court ruled that the *Old Timer* complaint alleged that the discharges occurred routinely in the regular course of business and thus, were neither unintentional nor unexpected. *See id*. We conclude, however, that Colorado courts would find the phrase "sudden accident" in St. Paul's exclusion clause to be ambiguous. We also conclude that Colorado courts would hold that the discharges alleged in the *Old Timer* complaint could have been unexpected and unintended from the District's point of view and, therefore, that St. Paul is not excused from its duty to defend because the claims in the *Old Timer* complaint arguably fall within policy coverage.

In *Public Service*, the Colorado Supreme Court recently held that even in a policy in which there would be no internal contradiction with other policy provisions, as there was in *Hecla*, the term "sudden" in a pollution exclusion clause is nevertheless subject to more than one possible meaning and is therefore inherently ambiguous. *See* 986 P.2d at 931-33. At issue in *Public Service* was a pollution exclusion clause restoring coverage if the polluting event was

"sudden, unintended and unexpected." *Id*. at 928-29. The Colorado Supreme Court rejected the same argument made here by St. Paul that "sudden" was only held to be ambiguous in *Hecla* in order to avoid an internal policy inconsistency. The Colorado Supreme Court in *Public Service* concluded that even though there was no inherent contradiction within the context of the policy at issue in that case, the phrase was nevertheless subject to more than one reasonable interpretation and must, therefore, be construed against the insurer. *See id.* at 931-33.

The *Public Service* decision also eliminates another argument advanced by St. Paul: that "sudden" must have a temporal construction, meaning abrupt, within the context of its policy in order to avoid redundancy. Both the District and St. Paul agree that the term "accident" in the St. Paul policy means damage that the insured "didn't expect or intend to happen," in other words, "unintended and unexpected." *See* Appellant's Br. at 9; Appellee's Br. at 30. Colorado follows the "general rule of contract construction that a court should seek to give effect to all provisions so that none will be rendered meaningless." *Public Service,* 986 P.2d at 933 (quotation omitted). St. Paul argues "sudden" cannot mean "unexpected and unintended" because both "sudden" and "accident" would mean "unexpected and unintended," rendering the complete phrase redundant and meaningless.

St. Paul's argument erroneously presumes "sudden" is only capable of two meanings, abrupt or unexpected. The Colorado Supreme Court rejected this argument in *Public Service*, and clarified that *Hecla* did not limit the term "sudden" to meaning only "unexpected and unintended." *See id.* at 932 n.6. *Hecla* noted several reasonable interpretations of the term "sudden." *See* 811 P.2d at 1091 (listing several meanings for "sudden," including "happening without previous notice" and "not foreseen" (quotation omitted)). In *Public Service*, the Colorado Supreme Court construed "sudden" to mean "not prepared for," in order to eliminate a possible redundancy and to give meaning to the term "sudden" in a clause which restored coverage for "sudden, unexpected and unintended" polluting events. 986 P.2d at 933. "In our view," the Colorado court explained, "in the context of the [policy's] pollution exclusion, 'sudden' must be read to mean something other than 'unintended' or 'unexpected,' because otherwise the term 'sudden' would be surplus language. However, we do not agree with [the insurer's] conclusion that the term 'sudden' is therefore unambiguous and means 'abrupt.'" *Id*. The court explained:

> We return to the principle that ambiguous contract terms are those that are reasonably susceptible to different meanings. In addition to meaning "unintended" or "unexpected," the term "sudden" can be used to mean "happening or coming without warning or premonition" or "unpremeditated, done without forethought," "unforeseen," and "not prepared for." Of course, we recognize that these terms are similar to each other, but each has its own distinct meaning. Therefore, we hold that the term "sudden" in [the policy's] pollution

-19-

exclusion is ambiguous.  Because it is ambiguous, this term must be construed against the insurer who drafted the policies and in favor of the insured.

*Public Service*, 986 P.2d at 933 (citations omitted).

Here, although the "sudden accident" phrase in St. Paul's policy is not identical to the "sudden and accidental" exclusionary clause in *Hecla*'s policy because of the deletion of the word "and," we conclude that Colorado would find the two clauses legally indistinguishable.  S*ee St. Paul Fire & Marine Ins. Co. v. Lefton Iron & Metal Co.*, 694 N.E.2d 1049, 1056-57 (Ill. Ct. App. 1998) (finding "sudden accident" ambiguous based on precedent finding "sudden and accidental" ambiguous).  The phrase could mean an abrupt accident, as St. Paul wishes us to construe it, or, just as in *Public Service*, it can reasonably be construed to mean "not prepared for, unintended and unexpected."  Thus, St. Paul cannot show that its temporal interpretation of the term "sudden accident" is the only reasonable interpretation of its exclusion clause.  Hence, it has a duty to defend.  *See Hecla*, 811 P.2d at 1090 (holding that, to avoid policy coverage, the insurer must be able to show that the exclusions are not subject to any other reasonable interpretation).

We also disagree with the district court's conclusion that the discharges alleged in the *Old Timer* complaint could not have been an "accident" within the meaning of Policy ZA.  Policy ZA doesn't define "accident," but it defines "accidental event" as loss that the insured "didn't expect or intend to happen."

Appellant's App. at 80. As noted, both parties agree that the term "accident" in the St. Paul policies means "unintended and unexpected." Colorado courts have held that "the phrase 'neither expected nor intended' should be read only to exclude those damages that the insured *knew* would flow directly and immediately from its intentional act." *Hecla*, 811 P.2d at 1088 (emphasis added). *Hecla* explicitly adopted the Second Circuit's reasoning in *City of Johnstown v. Bankers Standard Insurance Co.*, which held that "[o]rdinary negligence does not constitute an intention to cause damage; neither does a calculated risk amount to an expectation of damage. To deny coverage, then, the fact finder must find that the insured intended to cause damage." 877 F.2d 1146, 1150 (2d Cir. 1989) (quoting *Brooklyn Law School v. Aetna Cas. & Sur. Co.*, 849 F.2d 788, 789 (2d Cir. 1988). Quoting from *Johnstown*, *Hecla* stated:

> In general, what make injuries or damages expected or intended rather than accidental are the knowledge and intent of the insured. It is not enough that an insured was warned that damages might ensue from its actions, or that, once warned, an insured decided to take a calculated risk and proceed as before. *Recovery will be barred only if the insured intended the damages*, or if it can be said that the damages were, in a broader sense, "intended" by the insured because the insured knew that the damages would flow directly and immediately from its intentional act.

811 P.2d at 1088 (quoting *City of Johnstown*, 877 F.2d at 1150) (emphasis added).

Accordingly, damages arising from negligence may constitute an "accident" under Colorado law. Given this construction, the district court's ruling that the

discharges could not be an "accident" under St. Paul's policies is in error.  T      he *Old Timer* complaint makes alternative allegations regarding the knowledge or intent of the District in releasing effluent in excess of permit levels, alleging both intentional conduct and negligence.  *See* Appellant's App. at 61, 65, 69.  Thus, the *Old Timer* complaint leaves open the possibility that the District's conduct was merely negligent.

Relying heavily on this circuit's decision in *Broderick Investment Co. v. Hartford Accident & Indemnity Co.*, 954 F.2d 601, 606-07 (10th Cir. 1992), St. Paul argues that its pollution exclusion clause precludes coverage because the District intended to discharge effluent containing waste and contaminants from its sewage treatment facility into the North Clear Creek and that it is irrelevant whether or not the District intended or expected the damage caused by the discharge of those contaminants into the surrounding environment.  It argues that the "pollution of the *Old Timer* plaintiffs' land 'could not have occurred but for' the discharge of sewage effluent into the creek," Appellee's Br. at 32, and that the "the proper inquiry is whether those in control of the contaminants expected or intended the actions which resulted in contamination," *id*. at 31 (quotation and citations omitted).

In *Broderick,* we interpreted the phrase "discharge, dispersal, release or escape," in light of Colorado law and held that such a pollution exclusion clause

will exclude coverage whenever a party intentionally discharges wastes in a containment area, even if that party neither expects nor intends for pollutants to escape from the containment area. *See* 954 F.2d at 606-07. We held that whether the insured intended to cause damage after the initial discharge was irrelevant. *Id.* at 607.

The Colorado Supreme Court in *Compass* decided that our determination in *Broderick* of how Colorado would interpret the pollution exclusion clause was wrong. 984 P.2d at 617 ("We disagree with the *Broderick* analysis.").[4] *Compass* holds that the relevant inquiry is whether the insured "inten[ded] to discharge

---

[4]    When we sit in diversity, we are obligated to apply the most recent statement of state law by the state's highest court. *See Wood v. Eli Lilly & Co.*, 38 F.3d at 513. When, as here, an intervening decision of a state's highest court has resolved an issue of state law directly contrary to this circuit's prediction of how the state court would resolve the same issue, we are bound by the later state ruling, not by our prior panel's interpretation of state law. *Cf. Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1231 (10th Cir. 2000) (holding that one panel of this court must follow a prior panel's interpretation of state law "absent a supervening declaration to the contrary by that state's courts or an intervening change in the state's law."); *Kinnison v. Houghton*, 432 F.2d 1274, 1277 (10th Cir. 1970) (concluding that the panel need not look to a Tenth Circuit opinion addressing state law which supported the appellant's position, because an intervening state court decision held to the contrary); *see also Huddleston v. Dwyer*, 322 U.S. 232, 236 (1944) (holding that federal appellate courts must apply the state law as of the time of the appeal to give effect to the intervening state court decision if substantive state law changes between the time of a federal trial and appeal). Accordingly, we must follow the Colorado court's interpretation of the pollution exclusion clause in *Compass*, not our prediction in *Broderick* of how Colorado would interpret such a clause.

pollutants from the containment area into the surrounding environment as opposed to the company's intent to place pollutants into the containment area in the first instance." *Id.* at 617.

> [T]he average purchaser of insurance would have understood that mere placement of wastes into a place which was thought would contain or filter the wastes would not have been an event which would fall within the exclusion. . . . [W]here material has been deposited in a place which was believed would contain or safely filter the material, such as a waste disposal pit or sanitary landfill, the polluting event is the discharge, dispersal, release, or escape from that place of containment into or upon the land, the air or water, including groundwater.

*Id.* at 617-18 (quotation omitted).

*Compass* holds that, where the underlying complaint leaves open the possibility that the insured did not expect or intend the release of pollutants, the insurer is not excused from its duty to defend under Colorado law. *See id.* at 618. Because *Compass*, consistent with *Hecla*, focused on whether the insured intended the actual release of pollutants into the environment, it implicitly rejected St. Paul's argument that "whether the District expected or intended the contamination is not relevant; the proper inquiry is whether those in control of the contaminants expected or intended the actions which resulted in contamination." Appellee's Br. at 31 (quotation omitted).

St. Paul argues that the *Old Timer* complaint alleges that the District intentionally discharged pollutants directly into North Clear Creek. The *Old*

-24-

*Timer* complaint, however, leaves open the possibility that the District's conduct was only negligent, that the District did not expect or intend that its facility would not properly contain or filter the water it was treating, and that the District did not expect or intend to release pollutants into the surrounding environment. This is particularly so during the time period covered by Policy ZA, in which the *Old Timer* complaint alleges only a single warning to the District that its discharges exceeded permitted levels.

Policy ZA covers claims for damages resulting from events between February 18, 1983 and February 18, 1986. The *Old Timer* complaint alleges that the District was first notified that sampling disclosed effluent discharges in excess of permit levels in August 1985. It is possible, therefore, under the facts alleged in the complaint, that any discharges in excess of permitted levels prior to August 1985, were not known to the District. Even after the District was warned that its effluent was in excess of permit levels and even if it intentionally took calculated risks with respect to the management of its sanitation facility, it is still possible under the allegations of the *Old Timer* complaint that its conduct would still be considered "accidental" under Colorado law because the complaint leaves open the possibility that the District did not intend to cause the damages which flowed from its intentional acts. We repeat the test used in Colorado: "It is not enough that an insured was warned that damages might ensue . . . or that, once

-25-

warned, an insured decided to take a calculated risk and proceed as before. Recovery will be barred only if the insured intended the damages." *Hecla*, 811 P.2d at 1088; *see also Johnstown*, 877 F.2d at 1150 (noting that a discharge of toxic waste could theoretically take place accidentally over an extended period of time); *Benedictine Sisters of St. Mary's Hosp. v. St. Paul Fire & Marine Ins. Co.*, 815 F.2d 1209, 1210-12 (8th Cir. 1987) (finding coverage under a "sudden accident" pollution exclusion clause for a long-term discharge of soot from hospital's boiler stack because of malfunction, because of the possibility that insured was unaware of the dangerous condition and, thus, did not expect or intend the harm at the time it occurred).

St. Paul must demonstrate that "there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured." *Hecla*, 811 P.2d at 1090. On the face of the complaint, we conclude that there is a factual and legal possibility under Colorado law that the discharges were a "sudden accident," that is, that the District was not prepared for, and did not expect or intend to discharge pollutants during the time frame covered by Policy ZA. Hence, we conclude that the district court erred in finding that St. Paul did not have a duty to defend under Policy ZA.

The *Old Timer* complaint alleges that each violation of the District's permit constitutes a separate violation of the Clean Water Act. Because at least some of

the claims in the underlying complaint allege facts that might fall within the coverage of the policy's phrase "sudden accident," as these terms have been interpreted by the Colorado courts, St. Paul has a duty to defend the District on the whole suit under Policy ZA. *See Fire Ins. Exch.*, 953 P.2d at 1300 (holding that under Colorado law, once an insurer has a duty to defend an insured under one claim brought against the insured, the insurer must defend all claims brought at the same time, even if some of the claims are not covered by the policy). [5]

Accordingly, the judgment of the United States District Court for the District of Colorado is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

---

[5] The District also argues that is there is a duty to defend because St. Paul's construction of its pollution exclusion clauses would eliminate virtually all coverage for the District's operations--the treatment of sewage and discharge of treated wastewater--which would violate the District's reasonable expectation that the payment of its premiums would result in a comparable amount of coverage. *See Regional Bank of Colo., N.A. v. St. Paul Fire & Marine Ins. Co.*, 35 F.3d 494, 496, 497-98 (10th Cir. 1994) (describing the reasonable expectation doctrine recognized by Colorado in insurance contract interpretation). Because we conclude that St. Paul does have a duty to defend under Policy ZA, we need not address this issue.